In re Carson L. HICKS and Kathryn A. Hicks, Debtors.

Kathryn A. HICKS, Plaintiff,

v.

FIRST NATIONAL BANK OF HARRISON, HARRISON, ARKANSAS, Defendant.

Bankruptcy No. HA 85–73.
Adv. No. 85–533.

United States Bankruptcy Court,
W.D. Arkansas,
Harrison Division.

Oct. 20, 1986.

Claude Jones, Harrison, Ark., for debtors.

Wm. R. Gibson, Fayetteville, Ark., Trustee.

Van T. Younes, Harrison, Ark., for creditor.

## MEMORANDUM OPINION

ROBERT F. FUSSELL, Chief Judge.

On July 18, 1986 a hearing was held on the Complaint of debtor Kathryn A. Hicks alleging that the First National Bank of Harrison, Arkansas, (Bank) has acted in violation of 11 U.S.C. § 525, the debtor discrimination statute. In her complaint the plaintiff seeks reinstatement of her position with the Bank as teller for the Bank's window position number two, with all of the responsibilities and duties she had with the Bank prior to October 24, 1985. Mrs. Hicks also requests attorney's fees and the costs of the action.

The Court has jurisdiction to hear this matter as a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(o). The following constitute the Court's findings of fact and conclusions of law as required by Bankruptcy Rule 7052.

### Facts

Mrs. Hicks was employed as a teller by the Bank in December, 1983 and began working full time on January 13, 1984. Prior to her employment with the Harrison Bank, she had worked as a teller for the First National Bank in Chandler, Oklahoma, for approximately five years.

On October 22, 1985, while Mrs. Hicks was working as a teller for the defendant Bank, she and her husband, Carson L. Hicks, filed a chapter 7 bankruptcy petition. The following day, Wednesday, October 23, 1985, a news item appeared on page 8 of the "Harrison (Ark.) Daily Times." It stated:

#### Omaha Couple File Petition

LITTLE ROCK—Carson L. and Kathryn Hicks of Omaha, Ark., filed a chapter 7 liquidation petition in Bankruptcy Court Tuesday, listing debts of more than $209,000 and assets of more than $174,000.

Hicks owned Carson's Motors in Harrison.

Under Chapter 7, a trustee will be appointed by the court to sell off their assets and pay their creditors.

The petition listed nine debts including six loans from First National Bank at Harrison totalling more than $189,000. The loans were secured by the couple's residence, land, cattle and vehicles for the motor company.

Debra Keef, Kathryn Hicks' supervisor, saw the article around 3:00 p.m. on that same day. The next morning Mrs. Keef informed Mrs. Hicks that she would be transferred to the Bank's bookkeeping department until the bankruptcy proceedings were complete. At that same meeting Mrs. Hicks was asked to sign an affidavit presented to her which had already been signed on behalf of the Bank by Mrs. Keef and Doris Arnold, another vice president. The affidavit, introduced as Plaintiff's Exhibit # 2, stated:

IT IS understood and agreed by the undersigned, that KATHY HICKS is being transferred to a non-contact position within FIRST NATIONAL BANK OF HARRISON, as a result of attached EXHIBIT A.[1]

It is further understood that said transfer is made in an effort to protect the image and maintain customer confidence of First National Bank of Harrison while removing said employee from a compromising position. It is also understood that said transfer in no way reflects on the employee's job performance.

Said transfer is effective this 24th day of October, 1985 and will remain in effect until such time condition mentioned in Exhibit A has been resolved.

Mrs. Hicks refused to sign.

Mrs. Keef, whose duties at the time of Mrs. Hick's transfer included supervising

---

1. Exhibit A was a copy of the article that appeared in the Harrison newspaper giving notice of Mrs. Hicks' bankruptcy filing.

customer relations, testified that the Bank's decision to remove Mrs. Hicks from the teller window was prompted by "the bankruptcy notice the day before" the transfer. Mrs. Hicks' protests about the transfer were to no avail. She has remained in the bookkeeping department since her transfer the day after the notice of the bankruptcy appeared in the Harrison paper. Mrs. Keef testified that the Bank had three reasons for transferring Mrs. Hicks. According to Mrs. Keef, the Bank's first and foremost reason for wanting to move Mrs. Hicks "from her position of cash handling to one without was for Kathy herself," to prevent her embarassment. Mrs. Hicks testified that she had explained to the Bank that she would not be embarassed to remain as a teller and the credible testimony showed that Mrs. Hicks remained unwaivering in her insistence that she be allowed to keep her position. In light of Mrs. Hicks' testimony, the Bank's first "reason" provided no justification for the transfer. The second reason the Bank gave for the transfer was its fear of possible harm to customer relations and public confidence if Mrs. Hicks were allowed to remain at the teller window. Mrs. Keef testified in that regard as follows:

"Public confidence is difficult to measure and hard to maintain. * * * Banking is extremely competitive in Harrison and having [good] customer relations very important.

Personal contact is extremely important for First National Bank. And without confidence, we have no business.

We felt that, upon the notice [of Mrs. Hicks' bankruptcy] in the paper, there was no confidence as before.

Except for Mrs. Keef's self-serving testimony on point, to which the Court finds no weight should be given, the record is devoid of evidence that customer relations or public confidence was in fact harmed in any way. Mrs. Keef testified further that the move was necessary because the Bank could not bond a teller who had financial difficulties. However, there was no other evidence offered to support such conten-

tion, and the Court does not credit Mrs. Keef's statement on point.

The evidence reveals that Mrs. Hicks was a good employee who had received raises in her position as teller and special recognition for having a perfect quarter, i.e., for being totally balanced at the teller window throughout a three-month period.

It is uncontroverted that the transfer did not involve a decrease in pay. In fact, Mrs. Hicks has received a raise of 5%—the highest given—since her transfer to the bookkeeping department. The credible evidence on point also shows that the bookkeeping department and the in-take, or teller, department at the Bank are set up on the same pay scale with identical advancement opportunities.

### Issues

1. Was Mrs. Hicks the victim of discrimination by the Bank because of her bankruptcy?

2. If so, was the discrimination solely because she had filed bankruptcy?

3. If a § 525(b) violation is found, is Mrs. Hicks entitled to her old position and to attorneys fees and costs?

### Conclusions of Law

#### 1. Discrimination

One of the specific purposes of the federal system of bankruptcy is to provide the debtor "a fresh start in life, free from debts, except of a certain character...." *Stellwagen v. Clum,* 245 U.S. 605, 617, 38 S.Ct. 215, 218, 62 L.Ed. 507 (1918). The "fresh start" policy was first strenghtened by the United States Supreme Court in *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 273 (1971), when it restricted the discrimination that could be practiced against discharged debtors. The Bankruptcy Reform Act of 1978 codified *Perez* in what is now 11 U.S.C. § 525(a) of the Code:

[With specific exceptions], a governmental unit may not deny, revoke, suspend or refuse to renew a license, permit, charter, franchise, or other similar grant

to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

In the Bankruptcy Amendments and Federal Judgeship Act of 1984, Congress extended the anti-discrimination provisions to the private sector by adding a new subsection to the Code as follows:

No private employer may terminate the employment of, or discriminate with respect to employment against, an individual who is or has been a debtor under this title, a debtor or bankrupt under the Bankruptcy Act, or an individual associated with such debtor or bankrupt, solely because such debtor or bankrupt—

(1) is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act;

(2) has been insolvent before the commencement of a case under this title or during the case but before the grant or denial of a discharge; or

(3) has not paid a debt that is dischargeable in a case under this title or that was discharged under the Bankruptcy Act.

11 U.S.C. § 525(b). The only reported case under the new subsection, deals with a situation in which the debtor was fired by her private employer as a result of her bankruptcy filing. *In re Hopkins,* 66 B.R. 828 (Bkrtcy.W.D.Ark., 1986). In *Hopkins* the Court found a § 525(b) violation. *Id.*

There is no question but that, through her involuntary transfer to a non-public contact department, Mrs. Hicks has been treated differently than the Bank's other efficient, qualified tellers. The real issue becomes whether the discriminatory treatment of Mrs. Hicks is the type the Code was designed to prohibit. A recent law journal article has analyzed § 525(b) and concludes:

It would appear that discrimination for proscribed reasons having the effect of not only terminating an individual's employment, but also affecting his or her promotions, salary increases, job duties, discipline or any terms or conditions of employment, can be said to come within the protections afforded individuals.

Chobot, "Anti-Discrimination Under the Bankruptcy Laws," 60 Am.Bankr.L.J. 185, 197 (1986). This Court agrees that the discrimination prohibition of § 525(b) is violated when the debtor/employee's job duties are affected by the employer's actions, even though there are no adverse economic consequences as a result of the change in duties. In the case now before the Court it is undisputed that Mrs. Hicks' duties were changed from one of dealing with the public and handling cash to one with little or no customer contact and no handling of cash transactions. Therefore, the Court concludes that the Bank did discriminate against Mrs. Hicks with respect to her employment.

2. *"Solely because such debtor ... is a debtor"*

Even though discrimination is present, in order to prevail under § 525, Mrs. Hicks must provide sufficient evidence to establish that the discriminatory treatment resulted solely because of her bankruptcy status. *Accord, In re Hopkins,* No. ED 85–38M, slip op. (Bkrtcy.W.D. Ark., 1986); *In re Helms,* 46 B.R. 150, 154 (Bkrtcy.E.D.Mo.1985) (debtor denied judgment; no direct evidence discrimination solely because of debtor's recourse to bankruptcy laws).

Mrs. Keef, Mrs. Hicks' supervisor, admitted that Mrs. Hicks' transfer away from the teller window was made because of the notice of the bankruptcy in the paper and the Bank's fear that customer relations could be harmed if Mrs. Hicks remained in that position. As the facts set out above show, the Bank had confidence in Mrs. Hicks as a teller and had given her raises and rewards in that job. Further, there was no evidence that customer relations had been harmed. If an employee were allowed to change an employee's duties and position upon the premise of anticipated harm to customer relations, 11 U.S.C. § 525(b) would no longer provide protection against discrimination for the debtor employee. Accord, In re Hopkins, No. ED 85–38M, slip op. For example, "[a]n employer could always avoid this subsection by claiming that he anticipates a loss of public confidence by allowing a debtor to remain employed." Id.

In addition, there was no evidence that the Bank had any valid concern for Mrs. Hicks' possible dishonesty if she were allowed to remain as a teller. Further, no reason except the newspaper bankruptcy article was given for the transfer. In fact, Mrs. Keef indicated the transfer would be undone and Mrs. Hicks would again be given a position as teller once the bankruptcy proceedings end.

The facts surrounding Mrs. Hicks' transfer to the accounting department clearly establish that the decision to move her was based solely on her bankruptcy filing.

### 3. *Remedies*

#### (a) *Position*

■ Mrs. Hicks has requested that the Bank return her to her position as teller. Section 525(b) itself provides no remedy for violation by a private employer. As yet, there are no published cases under that new provision providing guidance for appropriate remedies. Section 525, as it appeared in the Bankruptcy Reform Act of 1978, was also devoid of any provision for remedy for governmental discrimination. Nevertheless, courts finding violations of the governmental discrimination provision

have considered and awarded a variety of remedies. See, e.g., In re Marti. l.v.e.s. Goldrich, 45 B.R. 514 (Bkrtcy.E.D.N.Y. 1984) (injunction granted against denial of financial assistance to debtor; affirmative direction granted requiring defendants to process debtor's applications for financial assistance); and see In re Terry, 7 B.R. 880 (Bkrtcy.E.D.Va.1980) (termination of employment for cause; no violation of § 525; restoration of employment considered but not justified because no violation); In re William Tell II, Inc., 38 B.R. 327 (Bkrtcy.N.D.Ill.1983) (affirmed bankruptcy court award ordering renewal of liquor license); In re Aegean Fare, Inc., 35 B.R. 923, 929 (Bkrtcy.D.Mass.1983) (governmental agency admonished that "appropriate sanctions exist for the violation" of section 525).

Presumably the remedies awarded are derived from 11 U.S.C. § 105(a) which grants the bankruptcy court the power to enforce provisions of the Bankruptcy Code. In re Hopkins, No. ED 85–38M, slip op. at 14; In re Fasse, 40 B.R. 198, 201 (Bkrtcy. D.Col.1984).

The requested remedy in this case is in line with the remedies considered by courts under the provision regarding governmental discrimination. The Court finds that an order restoring Mrs. Hicks to her position as teller is appropriate under § 525(b) and determines that it has the power to enter such an order under 11 U.S.C. § 105(a). In re Fasse, 40 B.R. at 201.

#### (b) *Attorney's fees and costs*

■ There is no authority in § 525 for an award of attorney's fees to the prevailing party. Congress has created a statutory basis for courts to award attorney's fees to private litigants who prevail under various civil rights laws. See, e.g., 42 U.S.C. § 1988 (Civil Rights Attorney's Fees Awards Act of 1976). There are also provisions in the Bankruptcy Code itself for awards of attorney's fees to prevailing parties. See, e.g., 11 U.S.C. § 523(d). If Congress had desired to sanction or encourage fee awards in cases under § 525, it could easily have granted the courts discretion to make such awards. It did not do so.

In the absence of specific statutory authority, a court ordinarily has no power to award attorney fees. *See, e.g., Palmer v. General Services Admin.*, 787 F.2d 300 (8th Cir.1986) ("Under [American Rule], absent express statutory authorization to the contrary, each party is ordinarily required to pay its own attorneys' fees"). There is no reason under the facts of this case to cause an exception to the general rule that each party must bear his own costs of litigation.

### Conclusion

In summary, the Court holds that the Bank discriminated against Kathryn Hicks in violation of 11 U.S.C. § 525(b) when it removed her from her teller position solely because she is a debtor under title 11, United States Code.

The Court further holds that, as a result of the Bank's violation of § 525(b), the Bank should be ordered to restore Mrs. Hicks to her teller position, as requested by Mrs. Hicks.

Finally, the Court holds that the request for attorney's fees and costs should be denied.

A separate order in accordance with this Memorandum Opinion will be entered.