In re James G. SWEENEY, Debtor.

James G. SWEENEY, Plaintiff,

v.

AMERITRUST COMPANY,
N.A., Defendant.

Bankruptcy No. B86–03747.
Adv. No. B87–0610.

United States Bankruptcy Court,
N.D. Ohio, E.D.

April 17, 1990.

Steven B. Potter of Dinn, Hochman, King & Melamed, Mayfield, Ohio, for plaintiff.

Hilary S. Taylor of Weston, Hurd, Fallon, Paisley & Howley, Cleveland, Ohio, for defendant.

## MEMORANDUM OF OPINION AND DECISION

WILLIAM J. O'NEILL, Bankruptcy Judge.

This matter is before the Court on Count I of the Amended Complaint filed by Plaintiff–Debtor, James G. Sweeney, and the answer of Ameritrust Company, N.A. Count I alleges discriminatory treatment under Section 525(b) of the United States Bankruptcy Code for Ameritrust's terminating Sweeney's employment. 11 U.S.C. § 525(b). Defendant's motion to dismiss Count I is also in issue. Motion and Counter-motion for summary judgment were denied, and Individual Defendants, Carolyn Weber and Stephen Hogan, were dismissed by order of June 14, 1989. Remaining Counts II through VIII of the complaint were withdrawn to the United States District Court for the Northern District of Ohio on June 29, 1989. Count I is a core proceeding under Section 157(b)(2) of Title 28 of the United States Code.

In addition to submitting joint trial exhibits, the parties stipulated as follows:—

"1. Plaintiff, James G. Sweeney, was hired by Ameritrust on October 9, 1989 (sic 1986) at an annual salary of $28,750.00 plus benefits.

2. Plaintiff commenced service with Ameritrust as a Trust Tax Officer I on October 27, 1986.

3. Plaintiff was not disciplined or informed of any problems with his job performance while employed at Ameritrust.

4. Plaintiff's employment was suspended without pay on November 28, 1986.

5. On December 3, 1986, Ameritrust was informed by Plaintiff that he had filed a Petition for relief under Chapter 7 of the Bankruptcy laws.

6. On December 4, 1986, Plaintiff's employment with Ameritrust was terminated.

7. The parties have agreed that certain exhibits shall be submitted to the court as joint exhibits which may be admitted into evidence without further authentication or proof. The parties will provide the court with these exhibits prior to trial."

The Court adopts the stipulations, and upon the evidence presented finds as follows and references accordingly:—

J EXH—Joint Exhibits 1–14;

P EXH—Plaintiff Exhibits 1–15;

D EXH—Defendant Exhibits A–K;

TRANS 1—Trial transcript for February 5, 1990;

TRANS 2—Trial transcript for February 6, 1990;

VD W—Video deposition transcript of Carolyn Weber Fleig for December 6, 1989;

VD H—Video deposition transcript of Stephen Hogan for February 3, 1990.

On October 9, 1986, Ameritrust hired Sweeney in the tax department as a Tax Officer—1, a specific bank title. The position involved preparing tax returns for a specified set of accounts. It entailed no supervisory duties, no handling of cash or valuables and no authority to write checks. (TRANS 1, 28–32; TRANS 2, 37–38). Moreover, Sweeney's duties and production were monitored and reviewed. (TRANS 1, 31). He was hired, however, with prospects for advancement. (TRANS 1, 42–43; TRANS 2, 37). The first 90 days of employment were probationary. A letter of employment informed him the offer was subject to routine review of his character and professional references. (J EXH, 1). A review was conducted and yielded satisfactory results. (J EXH, 4–6, 7; VD W, 44–48).

A bank personnel manual defines the probationary period as follows:—

"The first 90 days of employment are an Introductory Period during which the employee can learn about the job and the Company can evaluate the employee's ability to perform the job. It is a time of mutual adjustment and assessment. If at any time during such period it is felt that an employee is not adapted to his/her work, such employee or the Company may terminate employment ...

CREDIT BUREAU RIGHTS

The Company reserves the right to obtain a satisfactory background and credit report from a credit bureau as a term and condition of initial and continuing employment. The Company further reserves the right to discharge or transfer any employee who does not have a satisfactory report or refuses to allow the Company access to such a report." (D EXH—K, Section 2.04 p. 1)

This manual was neither distributed to employees nor given to Sweeney, and was apparently not referred to by bank officials when terminating his employment. (VD W, 51; TRANS 2, 133–136).

Sweeney has a law degree and passed portions of the examination for Certified Public Accountants. (TRANS 2, 27–28). Prior employment included positions with various accounting firms. (TRANS 2, 29–31). Ameritrust was satisfied with his qualifications and had no cause to question performance during his short tenure. (TRANS 1, 28, 32–33; VD H, 27–28; VD W, 41–46).

Impetus for the Bank's investigating Sweeney's finances and ultimately terminating employment was receipt of a "skip trace" on November 12, 1986. (J EXH, 10; VD W, 13–14, 48–49). This inquiry by another bank attempting to collect an account with Sweeney indicated he moved leaving no forwarding address. Regarding change of address, the "skip trace" was inaccu-

rate. (TRANS 2, 87). Ameritrust discovered Sweeney was in their employ. The Human Resource department commenced investigating his finances and ordered an in-house and trade credit report. (J EXH, 9, 11; VD W, 16–17). These reports disclosed substantial debt of approximately $24,000.00, including $2,277.00 owed Ameritrust. A meeting was called on November 28, 1986 to obtain Sweeney's explanation and reasons for his financial condition. (VD W, 18, 54–55; VD H, 25–30).

The November 28th meeting was called without prior notice of purpose. (TRANS 2, 40). Sweeney was questioned concerning the extent of and reasons for his debt and possible solutions. (VD W, 19–21; VD H, 12–13). He was not provided access to reports and information to which the Bank referred in its questioning. (TRANS 2, 43, 106; VD H, 32; VD W, 56–57). At the conclusion of the meeting he was suspended without pay, and a subsequent meeting was scheduled for December 3, 1986. He was instructed to obtain counseling through REACT, the Bank's employee assistance program, and to prepare a financial plan for the next meeting. (VD W, 21–22, 57–58).

In the interim, Sweeney contacted REACT, but was unable to arrange a recommended appointment with a financial counselor in time to obtain assistance to prepare a financial plan. (TRANS 2, 50–57). His attempt to schedule appointment with a consumer credit counseling service was also unsuccessful. (TRANS 2, 53–54). He filed a petition under Chapter 7 of the United States Bankruptcy Code on December 1, 1986, and prepared a financial plan reflecting this fact. (J EXH, 13, TRANS 2, 56–57).

At the December 3rd meeting, Sweeney presented his plan disclosing the bankruptcy. He was questioned regarding reasons for filing, impact on his unsecured debt, intentions for reaffirmation or payment of debts, and whether he would conduct his affairs differently if he were able to do it again. (J EXH, 14; TRANS 2, 58–62; VD W, 26–28, 61–66; VD H, 16, 36–40). No disposition was effected at this meeting, and Sweeney was told to return to the Bank for its decision. On December 4th, during the probationary period, he was informed his employment was terminated due to imprudent financial conduct and failure to indicate the problem would not recur. (J EXH, 14; VD W, 30–34; VD H, 16–17, 40; TRANS 1, 39–40).

The decision to terminate employment was predicated solely on Sweeney's financial condition. The Bank's interest in his finances emanated not from its routine reference check, but from the "skip trace". Officers who made the decision were unfamiliar with Sweeney's specific job responsibilities. (VD W, 39–40; VD H, 25). His department head was consulted, however, but offered no criticism. (TRANS 1, 32). In making their decision, the officers did not review Sweeney's references from former employers who expressed satisfaction with his performance and no belief he would be a poor risk in custody of funds. (J EXH, 4–6; VD W, 45–46). They focused on the magnitude of debt, reasons therefor, and his ability to handle it. He was suspended without pay because his debt exceeded the ability to pay. (TRANS 1, 14; VD W, 42, 51; VD H, 33). The November 28th meeting was to verify the bank's credit information. Were there additional assets or income of which the Bank was unaware? (VD W, 54–57). Sweeney revealed his bankruptcy filing at the December 3rd meeting and the decision to terminate ensued; he was so informed the following day.

Since termination, Sweeney conducted a comprehensive search for employment coincident with his education and experience. He engaged services of an employment search firm and submitted numerous resumes. (P EXH, 6, 13; TRANS 2, 4–25, 66–70, 112–114). To date he is unable to find employment comparable to the Ameritrust position. He obtained various positions incompatible with his training and expertise. Initially he accepted temporary and night-time employment to insure his availability for interviews. (TRANS 2, 70–73). Ultimately he accepted full-time employment in an unrelated job. (TRANS 2, 71–73). His interim earnings and benefits

from this employment excluding overtime, total $47,159.00. (P EXH, 11, 14, 15; TRANS 2, 78–84, 122–125). During this period, Sweeney has not remained current with tax interpretation, research and compliance. Consequently, absence from the field has eroded his skills. (TRANS 2, 115).

Ameritrust provides employees an extensive list of benefits in addition to salary. The list includes health and medical insurance, free checking, pension plan, savings plan, tuition reimbursement, vacation and sick time. (P EXH, 7; VD H, 21–23). Testimony reflects these benefits total "about 30%" of salary. (VD H, 23–24). In addition, employee annual raises averaged between 4½% to 5% in the past several years. (VD H, 24; TRANS 1, 42).

Sweeney was hired at an annual salary of $28,750.00. (TRANS 2, 73). His employment would not have entailed significant overtime. (TRANS 2, 83). Had he continued at the Bank, however, the evidence discloses his back pay from termination on December 4, 1986 through January 31, 1990, would total $94,860.00. (P EXH, 8; TRANS 2, 74–78). This includes raises at varying rates. A more accurate analysis of back pay reflects $2,206 from December 4, to December 31, 1986 representing a proportionate share of his starting annual salary, $28,750 for the year 1987, $30,044 for 1988 allowing an annual raise of 4.5%, $31,396 for 1989 with an additional 4.5% increase and $9,569 from January 1, to April 15, 1990 at a $32,809 annual salary with a 4.5% raise. In addition to salary, Sweeney's back benefits for this period total $29,786. (P EXH, 8, 9; TRANS 2, 74–83). Acceptance of his figures from a U.S. Chamber of Commerce Employee Benefit Survey is appropriate in view of testimony confirming their accuracy with the Bank's actual benefit value. (P EXH, 8, 9; VD H, 23–24). His total back pay and back benefits through April 15, 1990, therefore, would total $131,751.

I.

## A. DISCRIMINATION

Sweeney alleges his termination violates all subsections of Section 525(b) which pro-

hibits employment discrimination and states:—

"(b) No private employer may terminate the employment of, or discriminate with respect to employment against, an individual who is or has been a debtor under this title, a debtor or bankrupt under the Bankruptcy Act, or an individual associated with such debtor or bankrupt, solely because such debtor or bankrupt—

(1) is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act;

(2) has been insolvent before the commencement of a case under this title or during the case but before the grant or denial of a discharge; or

(3) has not paid a debt that is dischargeable in a case under this title or that was discharged under the Bankruptcy Act."

This section which extends the anti-discrimination provisions of Section 525 to the private sector was added to the Bankruptcy Code in 1984. Prior thereto the Code did not prohibit discrimination. See *Bell v. Citizen's Fidelity Bank and Trust Co.*, 636 F.2d 1119 (6th Cir.1980). Sweeney maintains he was terminated solely because he was a debtor under the Bankruptcy Code, was insolvent and for his discharge and non-payment of debt within the terms of Section 525.

The term "solely because" in Section 525 has been accorded various constructions. See generally *In re Rath Packing Co.*, 35 B.R. 615 (Bankr.N.D.Iowa 1983). Sweeney argues for a liberal interpretation of the term. See *Pennsylvania Public Utility Commission v. Metro Transportation Co.*, 64 B.R. 968 (Bankr.E.D.Pa.1986). However, absent ambiguity or a clearly expressed legislative intent to the contrary, the plain language of the statute is conclusive. Therefore, "[a] fundamental element of a Section 525(b) claim is that the insolvency, the filing of bankruptcy, or the discharge of a debt is the *sole reason* for discriminatory treatment by an employer." *Laracuente v. Chase Manhattan Bank*, 891 F.2d 17, 23 (1st Cir.1989). See also *Stockhouse v. Hines Motor Supply, Inc.*,

75 B.R. 83 (D.C.D.Wyo.1987); *In re Hopkins*, 66 B.R. 828 (Bankr.W.D.Ark.1986); *Hicks v. First National Bank of Harrison*, 65 B.R. 980 (Bankr.W.D.Ark.1986). Insolvency is generally defined as the financial condition of having one's debts exceed one's property. 11 U.S.C. § 101(31)(A).

■ Sweeney's termination was discriminatory within the terms of Section 525. The sole reason for termination was his financial condition. Inquiry into his finances was not part of the routine review as a probationary employee. It resulted from the skip trace. Moreover, the terms of his probationary status in the personnel manual, cannot and do not supersede federal bankruptcy anti-discrimination provisions. No job related function was invoked for termination. No reference was made to his favorable references. The Bank found no difficulty with Sweeney's credentials or job performance. The termination, though couched in terms of concern for financial imprudence and recurrence, was premised solely on his insolvency, bankruptcy filing and discharge of debt.

The decision to suspend Sweeney without pay was founded entirely on his insolvency reflected in the credit reports. The Bank was dissatisfied with the explanations of his debt. He was, however, given neither notice of the meeting nor opportunity to examine the skip trace or the credit reports. Termination immediately followed discovery of the bankruptcy filing. The Bank's criterion in determining financial irresponsibility and likelihood of recurrence was essentially that Sweeney chose bankruptcy to deal with his debt. Inquiry prior to the decision focused on the bankruptcy, Sweeney's reasons for filing, impact on unsecured debt and the possibility of reaffirmation. Under these circumstances, termination was discriminatory. The Bank's evidence that it hired a former bankrupt was counter-productive. It merely served to illustrate the Bank's attitude toward bankruptcy in this particular case.

### B. RELIEF

■ Section 525 contains no appropriate relief for violation thereof. Section 105(a) of the Code empowers the Court to carry out Title 11 provisions, and is generally recognized as the authority to fashion relief. 11 U.S.C. § 105(a); *Exquisito Services, Inc. v. United States of America*, 823 F.2d 151 (5th Cir.1987); *In re Hopkins*, 81 B.R. 491 (Bankr.W.D.Ark.1987); *Hicks v. First National Bank of Harrison*, 65 B.R. 980 (Bankr.W.D.Ark.1986). General principles of federal job discrimination law provide guidance in this endeavor. *Hopkins*. Plaintiff requests back pay, reinstatement, interest, attorney fees and costs.

### 1. Back Pay

An award of back pay is presumptively favored in federal job discrimination cases under Title VII. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Awards are appropriate under Section 105(a). *Hopkins*. Pursuant to the "make whole" purposes of such relief, the general rule is that the back pay period terminates on the date of judgment. *Terbovitz v. Fiscal Court of Adair County*, 825 F.2d 111 (6th Cir.1987). "The back pay award should completely redress the economic injury the plaintiff has suffered as a result of discrimination. It should include the salary, including any raises, which plaintiff would have received but for the discrimination, as well as sick leave, vacation pay, pension benefits and other fringe benefits (he) would have received but for discrimination". *Gutzwiller v. Fenik*, 860 F.2d 1317, 1333 (6th Cir.1988). Interim earnings are properly applied as a setoff. *Thornton v. East Texas Motor Freight*, 497 F.2d 416 (6th Cir.1974). Plaintiff has a duty to mitigate damages. *Ford v. Nicks*, 866 F.2d 865 (6th Cir.1989).

Sweeney was harmed by the Bank's discrimination and is entitled to an award of back pay. Clearly, he made reasonable and diligent effort to mitigate his damages. Consequently, back pay, including fringe benefits, is awarded for $84,592.00. This amount includes a set off of interim earnings excluding overtime. Because the Bank position would not have required ex-

tensive overtime, those amounts are properly excluded.

### 2. Reinstatement

Reinstatement of employment is an equitable remedy in federal job discrimination cases. It has also been applied to bankruptcy discrimination. *In re Hopkins*, 81 B.R. 491 (Bankr.W.D.Ark.1987). The decision to grant or deny reinstatement requires careful consideration of the facts in a particular case. *Ford v. Nicks*, 866 F.2d 865 (6th Cir.1989).

Sweeney was a bank employee for less than two months when terminated and had not completed the probationary period of employment. In the intervening years, he has not maintained the knowledge and skills required for competency in the position for which he was hired. Reinstatement under these circumstances is inequitable and inadvisable.

### 3. Attorney Fees and Costs

In the absence of express statutory authorization, awards of attorney fees and costs are inappropriate. No such authority exists herein. *Hicks v. First National Bank of Harrison*, 65 B.R. 980 (Bankr.W. D.Ark.1986).

### 4. Interest

An award of pre-judgment interest is inappropriate under the circumstances. This adversary proceeding was not commenced until November 30, 1987, approximately one year after Sweeney's bankruptcy filing and job termination. In addition, resolution of this proceeding was delayed by the parties' protracted settlement discussions and consideration of numerous motions. To penalize Ameritrust for this delay would be inequitable.

II.

 In its motion to dismiss, Ameritrust argues that the National Bank Act, Section 24 (Fifth) pre-empts the proscriptions of Section 525(b). 12 U.S.C. § 24 (Fifth). This Section provides that a national bank shall have power:—

"Fifth. To elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require

bonds of them and fix the penalty thereof, dismiss such officers or any of them at pleasure, and appoint others to fill their places."

While there was testimony that the Board of Directors delegates authority to hire and fire bank officers, there was insufficient evidence to show the Board dismissed Sweeney under the terms of this section. (VD W, 14–16). Moreover, pre-emption is a doctrine applicable to conflict between federal and state law. It is inapplicable to construction and interpretation of federal law. Provisions of the National Bank Act, derived from the National Bank Act of 1864 and enacted in 1922, must be construed and harmonized with the dictates of the more recent Bankruptcy Code Section 525(b) which preclude discrimination.

### CONCLUSION

Ameritrust's termination of Plaintiff's employment was discriminatory and violated the proscriptions of Section 525(b)(1); (b)(2); and (b)(3) of the Bankruptcy Code. Judgment is granted therefore, on Count I of the amended complaint. Defendant's motion to dismiss Count I is denied. Appropriate relief under the circumstances is an award to Plaintiff of $84,592.00, representing back pay including fringe benefits, with no reinstatement, attorney fees, costs or interest. Though considered, no amount is included for injury to professional reputation, to career potential or for future earnings.