**Carla F. EVERETT, Plaintiff,**

v.

**LAKE MARTIN AREA UNITED WAY, et al., Defendants.**

**No. Civ.A. 97–C–987–E.**

United States District Court,
M.D. Alabama,
Eastern Division.

Feb. 25, 1999.

Kenneth T. Hemphill, Montgomery, AL, Gary E. Atchison, Montgomery, AL, for Carla F. Everett, plaintiff.

James P. Alexander, Ronald H. Kent, Jr., Bradley, Arant, Rose & White, Birmingham, AL, for defendants.

## *MEMORANDUM OPINION AND ORDER*

CARROLL, United States Chief Magistrate Judge.

### I. INTRODUCTION AND PROCEDURAL HISTORY

The plaintiff, Carla Everett, filed this action under 11 U.S.C. § 525(b) against Lake Martin Area United Way, a non-profit corporation, and Katherine Ann Turner, Dianne Gill, Gary Burkett and Fred Braswell, all of whom are Lake Martin United Way Board members. The individual defendants are sued in both their official and individual capacities. Everett alleges that she was terminated as the Executive Director of Lake Martin United Way because she filed bankruptcy. This cause is currently pending before the court on a motion for summary judgment filed by the defendants. The plaintiff was provided an opportunity to respond and has done so.

### II. FACTS [1]

The Lake Martin United Way is a non-profit corporation which manages an annual campaign in the Lake Martin area of Alabama soliciting funds from both individuals and employers to fund various charitable agencies and organizations. Lake Martin United Way is governed by a Board of Directors normally consisting of 12 volunteers from the community. Five members of the Board of Directors serve as the Executive Board. Because the Executive Board members are all volunteers, they spend very little time actually performing administrative tasks. Generally, the full board simply meets quarterly to address administrative matters. The Executive Board meets more frequently. The remainder of the time spent by Executive Board members on behalf of United Way is for raising money. In 1995, the members of the Executive Board were Fred Braswell (president), Kathleen Turner, Raymond Caffey, Diane Gill and Frank Harris. In 1996, the members changed slightly. Gary Burkett replaced Frank Harris and Kathleen Turner became the president.

There is one paid position with the Lake Martin United Way, Executive Director. The Executive Director is an employee at will who serves at the pleasure of the

---

1. The facts are recited, as they must be in a summary judgment proceeding, after viewing the evidence and the reasonable factual inferences arising from that evidence in a light most favorable to the plaintiff. *See Hale v. Tallapoosa County,* 50 F.3d 1579, 1581 (11th Cir.1995).

Board. He/she is responsible for keeping the United Way office open, answering phone calls and responding to mail. The Executive Director also is responsible for coordinating and supervising the annual fund raising campaign. Because the annual campaign takes place only once a year during the fall, the time commitment of the Director varies with less time required when the campaign is not in progress but with significant expenditures of time when the campaign is in full swing.

The plaintiff, Carla Everett, was hired by the Executive Board on September 1, 1995. At the time of her hiring, Al Hartley was the Executive Director. Everett was hired as the Assistant Executive Director and was to occupy that position until the end of the year when Hartley was to retire. Hartley would be responsible for the annual campaign and Everett was to be responsible for setting up a new computer system, and answering the telephones. At that time, plaintiff did not have any responsibilities for activities in the campaign. The defendants have provided evidence that there were conflicts between Everett and Hartley that required the effort of the Executive Board to resolve. The plaintiff has filed an affidavit which suggests that Braswell and Turner authorized and caused the conflict because they wanted Hartley out of the picture and took active steps to accomplish that end.

At the end of 1995, Hartley resigned and Everett became the Executive Director. Kathleen Turner assumed the presidency. Braswell remained on the Executive Board. Everett's responsibilities, as Director, consisted of visiting with the Lake Martin United Way member agencies, handling the financial reporting and collection matters, and preparing for the annual campaign drive. Everett was terminated from her position as Executive Director on July 26, 1996.

At some point prior to her termination, Frank Harris, the CEO of Russell Hospital which is a major United Way contributor, called Turner in her capacity as Board president and told her "You've got a problem. Your United Way executive director has declared bankruptcy." Another member of the Executive Board, Dianne Gill, also discovered that Everett had declared bankruptcy. As part of her duties at SouthTrust Bank, Gill reviews a monthly publication that provides information on public filings such as bankruptcy. Gill did not inform anyone on the United Way Board about the bankruptcy at that time. After her conversation with Frank Harris, Turner called both Braswell and Gill to inform them about Harris's statement. Turner told Braswell that "we had a contributor and former board member that was concerned about the community repercussions if it got out that Ms. Everett had declared bankruptcy."[2] The conversation with Braswell led into a discussion about other problems that Everett was causing. Following the phone conversations, Braswell, Turner and Gill, each Executive Board members, met to discuss whether Everett should be retained as the Executive Director. They discussed Everett's bankruptcy and its possible impact on the United Way. Turner testified in deposition concerning the discussion about Everett's bankruptcy:

> The two specific things that I recall regarding the bankruptcy were, again, a conversation about the community's perception of possible problems within United Way if they were to give this one-person office their money that might have resulted from that. I think the other thing that we discussed was that that was not a reason to fire someone. I can even remember saying at some point we could add a layer of audit and be prepared to answer that question if it ever came up if that was the only issue.[3]

**2.** Deposition of Kathleen Turner of August 5, 1998 at 31.

**3.** *Id.* at 68.

Also at the meeting, they discussed other issues such as Everett's problems with Hartley, conversations that Everett had with Turner's boss, problems with a video project and generally, the problems that Everett was having in the community. Braswell, Turner and Gill eventually decided to ask Everett for her resignation and to set a meeting of the Executive Board. Braswell phoned Burkett who had not been at any of the meetings to discuss Everett and explained that an Executive Board meeting was to be held to ask for Everett's resignation. Prior to that time, Burkett had not been made aware of any problems with Everett. Following the Executive Board meeting which was on either July 25 or 26, 1996, Everett resigned. The defendants deny that they sought Everett's resignation because of her bankruptcy. In Turner's words

> She was not fired because she declared bankruptcy. She was fired—or her resignation was requested, which is what happened because of a continuing pattern of problems between Carla and other people in our community, people that we depended on as volunteers, people that we depended on for contributions.[4]

## III. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element to her claims, and on which she bears the burden of proof at trial. *Id.* To satisfy this burden, the nonmovant cannot rest on the pleadings, but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e).

The court's function in deciding a motion for summary judgment is to determine whether there exist genuine, material issues of fact to be tried; and if not, whether the movant is entitled to judgment as a matter of law. *See Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d 1559 (11th Cir.1987). It is substantive law that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also DeLong Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499 (11th Cir.1989), *cert. denied,* 494 U.S. 1081, 110 S.Ct. 1813, 108 L.Ed.2d 943 (1990).

When the court considers a motion for summary judgment, it must refrain from deciding any material factual issues. All the evidence and the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir.1983); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

With these rules and principles of law in mind, the court will determine whether

4. *Id.* at 107.

summary judgment is appropriate or whether there exist genuine issues of material fact that should properly proceed to trial for resolution.

## IV. DISCUSSION

### A. THE CLAIM UNDER 11 U.S.C. § 525(b)

■ The plaintiff's federal claim invokes the anti-discrimination provision of the Bankruptcy Code, 11 U.S.C. § 525(b)(1) which reads in pertinent part,

> No private employer may terminate the employment of, or discriminate with respect to employment against, an individual who is or has been ... a debtor or bankrupt ... solely because such debtor or bankrupt is or has been a debtor or bankrupt under the Bankruptcy Act.

The court agrees with the reasoning of the decision of the United States Court of Appeals for the First Circuit in *Laracuente v. Chase Manhattan Bank,* 891 F.2d 17 (1st Cir.1989), that the term "solely" as used in the statute means what it says—i.e. that a person seeking relief under these bankruptcy anti-discrimination provisions for a termination must prove that the filing of a bankruptcy was the sole reason for termination. In the context of a summary judgment proceeding, the plaintiff must produce some evidence to establish that she was terminated and that the sole reason for her termination was that she filed bankruptcy. *See Celotex Corp. v. Catrett, supra.*

It is undisputed that the plaintiff was terminated and that the defendants knew that the plaintiff had filed bankruptcy at the time she was terminated. It is also undisputed that the plaintiff's bankruptcy was discussed among the decision makers prior to her termination. The defendants also have presented evidence that the plaintiff was terminated for reasons other than bankruptcy. However, the facts are in dispute as to whether these reasons existed at all and whether they were ever mentioned to the plaintiff. Where, as

here, an employer's stated reasons for an employment decision involves the employee's performance, but there is no supporting documentation, an inference arises that the reasons stated are simply a pretext for unlawful activity. *Lloyd v. Georgia Gulf Corporation,* 961 F.2d 1190, 1195 (5th Cir. 1992). Because this court must view the evidence and inferences arising from the evidence in a light most favorable to the plaintiff, it cannot grant summary judgment on the 525(b) claim. The court wishes to note, however, that this ruling does not indicate that the plaintiff would prevail at trial. It simply means that, because of the disputed facts and the inferences which arise from those facts, summary judgment would be inappropriate.

### B. THE STATE LAW CLAIMS

■ The defendant's motion for summary judgment is directed not only to the plaintiff's federal claim, but also her state law claims. In their summary judgment motion, the defendants have challenged the plaintiff's ability to establish a prima facie case both on the merits of the claims and argue that the defendants are immune under the state law which confers immunity on volunteers to charitable organizations. Under the decision of the United States Supreme Court in *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), a party must present some evidence, in opposition to a summary judgment motion, to establish "the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." In response to the defendant's motion for summary judgment on the state law claims, the plaintiff has filed a brief which consists of 11 lines. She has made no attempt to show how the facts before the court establish a prima facie case on each of her state law claims or to rebut the defendants' contention that they are immune. A district court in ruling on a motion for summary judgment is not required to wade through and search the entire record for

some special facts that might support the plaintiff's claim. *Barge v. Anheuser–Busch,* 87 F.3d 256, 260 (8th Cir.1996). The response of the plaintiff has failed to provide sufficient evidence to the court to overcome the defendants' motion.

## V. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the motion for summary judgment filed by the defendants on June 19, 1996 be GRANTED as to all state law claims and DENIED as to plaintiff's claim brought under the provisions of 11 U.S.C. § 525(c). A non-jury trial on that claim will be set by separate order.