*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0063p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

WILLIAM LONA WHITE, SHIRLEY JEAN WHITE,
　　　　　　　　　　　　　　*Appellants,*

　　　*v.*

KENTUCKIANA LIVESTOCK MARKET, INC.,
　　　　　　　　　　　　　　*Appellee.*

No. 03-6579

>

Appeal from the United States District Court
for the Western District of Kentucky at Owensboro.
No. 03-00105—Joseph H. McKinley, Jr., District Judge.

Argued: October 27, 2004

Decided and Filed: February 9, 2005

Before: NELSON and COOK, Circuit Judges; WEBER, District Judge.[*]

---

## COUNSEL

**ARGUED:** Jeanie Owen Miller, JEANIE OWEN MILLER LAW OFFICE, Owensboro, Kentucky, for Appellants. Brian L. Haynes, MEYER, HAYNES, CRONE & MEYER, Owensboro, Kentucky, for Appellee. **ON BRIEF:** Jeanie Owen Miller, JEANIE OWEN MILLER LAW OFFICE, Owensboro, Kentucky, Russell L. Wilkey, WILKEY & LEWIS, Owensboro, Kentucky, for Appellants. Brian L. Haynes, John D. Meyer, MEYER, HAYNES, CRONE & MEYER, Owensboro, Kentucky, for Appellee.

---

## OPINION

---

　　　DAVID A. NELSON, Circuit Judge. The Bankruptcy Code prohibits private employers from discharging bankrupt employees "solely" because of the employees' having invoked the protection of the bankruptcy laws. See 11 U.S.C. § 525(b).

　　　The appellants in the case at bar, a husband and wife, filed a joint bankruptcy petition under Chapter 7. Three days after notice of the bankruptcy was published in the local newspaper, the couple's mutual employer fired them. At a bench trial in the ensuing adversary proceeding, the bankruptcy court determined that one factor in the employer's decision — a factor sufficient in and

---

[*] The Honorable Herman Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

1

of itself to justify termination of the husband's employment — had been a request by the husband to be given a company car in exchange for helping his bosses falsify their income tax returns.

On the strength of this factual finding — and notwithstanding that, as we read the record, the automobile issue may not have been the most significant factor in the employer's decision to let the couple go — the bankruptcy court concluded that the employees had not been fired "solely" because of the bankruptcy. Their claim for relief under § 525(b) was therefore denied.

The district court affirmed the denial of relief, expressing agreement with the proposition "that 'solely because' means exactly what it says . . . ." We too agree with that proposition, and we shall affirm the challenged judgment.

I

A

Appellant William Lona White became an employee of Kentuckiana Livestock Market, Inc., a rural stockyard/auction business, in 1978. Named secretary-treasurer of the corporation in 1979, he held that position until April 4, 2001. His duties included keeping the company's books.

Appellant Shirley Jean White, as she is now known, married Mr. White in 1995. She had worked for Kentuckiana longer than he, having been hired by the company in 1965. Her duties were secretarial and clerical in nature.

In 1989 Mr. White and his then wife opened a restaurant business in Owensboro, Kentucky. Shareholders and customers of Kentuckiana were invited to invest in the restaurant, and some of them did so. The restaurant failed after three years, and the investors got none of their money back.

In the year 2000 Mr. White became part owner of a welding and fabricating shop. He borrowed money from a bank in this connection and, unable to repay, he and his current wife filed a Chapter 7 bankruptcy petition on March 16, 2001. (The filing was reported in a local newspaper on April 1, 2001.) Because of the bankruptcy, Mr. White had to surrender his personal automobile.

Sometime around the end of March, it appears, Mr. White called the chairman of Kentuckiana's board of directors, Ralph Douglas Wood, to ask if the board would approve the purchase of a vehicle for his (White's) use. Mr. Wood subsequently testified that he told White this would be a matter for the company's management to decide and that White would have to talk to Pat and Mike Baker. The former was Kentuckiana's president and the latter its vice-president and general manager.

Mr. White approached Mike Baker first, according to Mr. Baker. After broaching the vehicle question with him, Mike Baker testified, "[White] said if you'll scratch my back I'll scratch yours." At this point in the conversation White allegedly held up a Kentuckiana check which, although it represented a commission for Mike Baker, had been made out in the name of a boat dealer. "I will lose stuff like this," Mr. White is alleged to have said.

Mr. White approached Pat Baker later in the day, according to the latter's testimony, telling him that "[i]f you'll buy me an automobile . . . it will be good for Kentuckiana, and it will be good for Pat Baker." Asked to explain this last remark, Pat Baker testified, Mr. White said that he would "lose certain documents pertaining to your income." Mr. Baker took this to mean that "my commission check . . . wouldn't be reported [for tax purposes]  . . . ."

On the following day, April 4, 2001, Pat Baker fired Mr. and Mrs. White. Baker refused to give the Whites any reason for this action. According to board chairman Wood, however, Pat Baker

had called Wood to say he was thinking of discharging the couple for reasons that Wood recalled thus:  "The car was one reason, and they [Pat Baker and Mike Baker] had had a decline in confidence in their [the Whites'] general ability in how they were performing their duties."  Pat Baker did not mention the bankruptcy, according to Mr. Wood.  According to Mrs. White, on the other hand, Billy Barnett, a board member who was not called as a witness at trial, told her that Pat Baker had said he fired the Whites because of their bankruptcy.

Less than a week after the firings, Pat Baker identified the bankruptcy and the prior failure of Mr. White's restaurant business as the main reason for Kentuckiana's having terminated the Whites' employment.  In a sworn statement that Pat Baker submitted to the Kentucky unemployment insurance authorities on April 10, 2001, Baker responded as follows to a question asking him to state his "primary reason" for discharging Mr. White:  "[His] past 2 personal business ventures[.]  Mr. White has filed bankruptcy in one, and beat several people, some of them farmers, out of thousands of dollars.  This reflects poorly on Kentuckiana Livestock for having him employed."

In response to a section of the unemployment insurance form calling for a detailed description of the "final incident," Pat Baker had this to say:

> "When Bill White declared bankruptcy in March, and failed in his restaurant business before that, we (Kentuckiana Livestock Market, Inc.) felt his employment here hurts our business, decreases the faith farmers have in our bookkeeping department and the management doesn't trust him."

The form completed by Baker with respect to Mrs. White was similar.

At his deposition, Pat Baker claimed several other reasons for the decision to terminate Mr. White's employment.  The reasons included rudeness to customers, failure to inform employees how the amount of each paycheck had been calculated, failure to record payments received from customers, and "general sloppy bookkeeping."  None of these alleged problems was documented, Mr. Baker acknowledged, but he said that they nonetheless overshadowed the bankruptcy in importance.  The bankruptcy, he insisted, had "very little" to do with Mr. White's discharge.

When asked why Mrs. White's employment had been terminated, Mr. Baker testified that it was "[b]ecause she's married to Bill White . . . ."  Baker also said that Mrs. White was involved in the sloppy bookkeeping.

B

The Whites responded to their pink slips by commencing an adversary proceeding against Kentuckiana in the bankruptcy court.  The complaint alleged that "the discharge of the Plaintiffs was motivated by the filing of Plaintiffs [*sic*] Chapter 7 Bankruptcy in direct violation of 11 U.S.C. § 525."  The relief sought included compensatory damages measured by the salaries and benefits (a combined total, initially, of $54,567.28 per annum) that the Whites could have expected to receive if each of them worked to age 70,[1] plus punitive damages, plus attorney fees and costs.

The case was tried before the bankruptcy judge sitting without a jury.  Having heard the evidence, the bankruptcy judge found as a fact that the Whites' filing of their bankruptcy petition was not the sole reason for the termination of their employment.  The vehicle-purchase issue "was a factor in the decision to terminate the employment of the Whites," the judge found, and that factor "was sufficient reason for Bill White's termination."  As to Mrs. White, the judge found that her employment "was terminated simply because she was married to Bill White;" this being so, the

---

[1]Mr. White was 63 years old when the complaint was filed, and Mrs. White was 56.

judge concluded that "she was not terminated *solely* for filing bankruptcy." The Whites' claims were dismissed with prejudice.

The district court affirmed the dismissal on appeal. A timely appeal to this court followed.

II

Section 525(b) of Title 11 of the United States Code provides, in relevant part, that

> "No private employer may terminate the employment of . . . an individual who is or has been a debtor under this title [*e.g.*, an individual who has filed a petition under the Bankruptcy Code] . . . solely because such debtor . . .
>
> > (1) is or has been a debtor under this title [*e.g.*, has filed for bankruptcy] . . . ."

In rejecting the Whites' claim for damages under this section, the bankruptcy court acknowledged that "[t]he Whites were able to establish in their pleadings and at trial a prima facie case that Kentuckiana engaged in discriminatory treatment in violation of 11 U.S.C. § 525(b) . . . ." Based on "the totality of the particular facts and circumstances" brought out at trial, however, the bankruptcy court concluded that "Kentuckiana has overcome the Whites' prima facie case." Specifically, the court found, "[t]he vehicle purchase issue was sufficient reason for Bill White's termination, *and was a factor in the decision to terminate the employment of the Whites*." (Emphasis supplied.) Because Bill White's offer to help his bosses fiddle their tax returns in exchange for the use of a company car constituted a factor in the decision to fire Mr. White, as the court saw it, White could not have been fired "solely because" he was a debtor under the Bankruptcy Code. The same was true of Mrs. White, in the bankruptcy court's view: "Since Shirley White was terminated simply because she was married to Bill White, this court also finds that she was not terminated *solely* for filing bankruptcy."

In their challenge to this decision, the Whites contend here, as they contended in the district court, that

— The words "solely because," as used in § 525(b), should not be read literally. Instead, the Whites contend, debtors should be able to obtain relief under § 525(b) if they can prove that bankruptcy was at least a substantial factor in the adverse employment action,[2] just as aggrieved employees can obtain relief under Title VII of the Civil Rights Act of 1964 or under the Age Discrimination in Employment Act if they can prove that their race, or sex, or age was a substantial factor in an adverse employment action.

— Just as in race, or sex, or age discrimination cases, a court adjudicating a bankruptcy discrimination case under § 525(b) must use the familiar burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

— The bankruptcy court failed to employ the *McDonnell Douglas* framework properly in the case at bar, because the court failed to make any findings as to whether Kentuckiana's stated reason for discharging the Whites was a mere pretext for unlawful bankruptcy discrimination.

---

[2] Another way of expressing the same idea is to say that the bankruptcy must have "played a significant role" in the adverse action. See *Bell v. Sanford-Corbitt-Bruker, Inc.*, No. CV186-201, 1987 WL 60286, *3 (S.D. Ga. Sept. 14, 1987).

— Even if the bankruptcy court did find in favor of the employer on the issue of pretext, finally, any such finding was clearly erroneous.

We are not persuaded.

Turning first to the central legal question presented in this case — the question whether Congress used the word "solely" in § 525(b) to mean something other than "solely" — we note that the Whites' argument finds support in the unpublished opinion of the United States District Court for the District of Georgia in the *Bell* case cited at n.2, *supra*. Asserting that the term "solely" is "a word of some ambiguity," the *Bell* court stressed that "[i]t is the policy of the Bankruptcy [Code] to rehabilitate, and provide with a fresh start, debtors who avail themselves of the [Code's] protections." *Id*. at *3. The *Bell* court went on to say that it would be "virtually impossible" for a bankrupt to prove that his employer had fired him "due only to bankruptcy . . . ." Citing *Pennsylvania Pub. Util. Comm'n v. Metro Transp. Co. (In re Metro Transp.)*, 64 B.R. 968 (Bankr. E.D. Pa. 1986), where the bankruptcy court indicated that it "would have found an adverse action, concerning which a bankruptcy filing appears to have *played a significant role*, to be violative of § 525," the *Bell* court concluded that "[t]o interpret 'solely' as requiring a bankrupt to prove this scenario [*i.e.*, that he had been fired "due only to bankruptcy"], would conflict with the policies of the Bankruptcy [Code]." *Id*.

*Bell* fails to ring true in several respects. First of all, the word "solely" is not preternaturally ambiguous. Secondly, if a bankrupt employee has in fact been fired solely because of the bankruptcy, we do not see why it should be "virtually impossible" for that fact to be proved. Finders of fact routinely grapple with questions no less arcane than this.

Generally speaking, of course, "[t]he plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstratively at odds with the intentions of its drafters." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989) (internal quotation marks and brackets omitted). We do not believe that it would be demonstrably at odds with the intentions of the drafters of the Bankruptcy Code to interpret "solely because" as meaning what it plainly says.

It is true that the decision of Congress to include the words "solely because" in § 525(b) makes it harder for a plaintiff to prove bankruptcy discrimination than to prove discrimination on the basis of race, or sex, or age. The words "solely because" are conspicuous by their absence in Title VII and the Age Discrimination Act, however, and it would not have been irrational for Congress to conclude, as a policy matter, that claimants in bankruptcy discrimination cases should be required to prove more than claimants in race, or sex, or age discrimination cases are required to prove. Bankruptcy is different; there is not much one can do about his race, or sex, or age, after all, but bankruptcy, while sometimes the result of catastrophic events over which the bankrupt has no control, often results from conduct as to which the bankrupt had a measure of choice. Congress is free to act on this perception, and may well have done so here. In any event, we reject the notion that the policy of the Bankruptcy Code requires us to suspend the normal canons of statutory construction whenever their application would work to the disadvantage of the debtor.

It is fair to say that the *Bell* court's view of the proper interpretation of "solely because" is not representative of mainstream judicial opinion on the issue. See, for example, *Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1268-69 (9th Cir. 1990) ("In order to maintain a cause of action under section 525(b), a plaintiff must show that [filing for bankruptcy] provided the *sole* reason for termination"); *Laracuente v. Chase Manhattan Bank*, 891 F.2d 17, 21-23 (1st Cir. 1989) (explicitly rejecting the reasoning of *Bell* and holding that "a fundamental element of a § 525(b) claim is that . . . the filing of bankruptcy . . . is the *sole reason* for discriminatory treatment by an employer"); *Everett v. Lake Martin Area United Way*, 46 F. Supp.2d 1233, 1237 (M.D. Ala. 1999)

("[T]he term 'solely' as used in the statute means what it says – i.e. that a person seeking relief under [§ 525(b)] for a termination must prove that the filing of a bankruptcy was the sole reason for termination"); *Stockhouse v. Hines Motor Supply (Wyoming), Inc.*, 75 B.R. 83, 85 (D. Wyo. 1987); *Sweeney v. Ameritrust Co., N.A. (In re Sweeney)*, 113 B.R. 359, 362-63 (Bankr. N.D. Ohio 1990); *In re Hopkins*, 66 B.R. 828, 831 (Bankr. W.D. Ark. 1986). The reading given § 525(b) in these cases is the sounder one, we believe, and we adopt it here.

As to the bankruptcy court's alleged failure properly to apply the *McDonnell Douglas* framework in the case at bar, the issue strikes us as a red herring. In employment discrimination cases, rightly or wrongly, the courts have long recognized a sharp distinction between "direct evidence" and "circumstantial evidence." Here we have an abundance of "direct" evidence that the Whites were fired because of their bankruptcy. Assuming, without so deciding, that there may be occasions where use of the *McDonnell Douglas* approach would be required in the trial of a § 525(b) case, the present case clearly does not present such an occasion. The *McDonnell Douglas* framework deals with circumstantial evidence, see *Warfield v. Lebanon Correctional Institution*, 181 F.3d 723, 728 (6th Cir. 1999), and the case at bar is simply not a circumstantial evidence case. Given the abundance of direct evidence that bankruptcy was a factor in Kentuckiana's decision to fire the Whites, the salient factual issue for the bankruptcy court was whether other factors played a role in the decision as well. It is not apparent to us how *McDonnell Douglas* could provide much help in resolving that issue.

After considering all the evidence adduced at trial, as we have seen, the bankruptcy court found as a fact that Mr. White's offer to help the Bakers cheat on their income taxes played a role in the decision to dispense with the Whites' services. The bankruptcy court obviously believed that this was a real factor and not a phony one.

We are in no position to second-guess the bankruptcy court's finding. The finding is amply supported by evidence that includes the testimony of board chairman Wood — a witness whose credibility was high, in the bankruptcy court's judgment — as well as the answer Pat Baker gave to the question on the unemployment insurance form that asked him to "describe the final incident in detail." The concluding observation given by Mr. Baker in this connection, it will be recalled, was that "management doesn't trust him" — and this lack of trust was readily explainable by Mr. White's offer, one day before he was fired, to "lose" business records in exchange for a company car.

The district court's judgment affirming the dismissal of the adversary proceeding is **AFFIRMED**.