**In re David HOPKINS and Mary Hopkins, Debtors.**

**Bankruptcy No. ED 85–38M.**

United States Bankruptcy Court,
W.D. Arkansas,
El Dorado Division.

Aug. 7, 1987.

Jack Dickerson, Hot Springs, Ark., for debtors.

Joseph A. Strode, Pine Bluff, Ark., for Bank of Bearden.

A.L. Tenney, Trustee, Little Rock, Ark.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

On September 24, 1985, this Court conducted a hearing on the debtors' complaint to cite the Bank of Bearden (Bank) and the Bank's president, Ricky Green, for contempt for violating 11 U.S.C. § 525, the debtor antidiscrimination statute. The Court entered its memorandum opinion on August 5, 1986, holding that the Bank had violated 11 U.S.C. § 525(b). However, the Court denied without prejudice the complaint for contempt, but allowed the debtors to amend their complaint to seek the appropriate remedy.

A hearing was held January 21, 1987, on the debtors' amended complaint. The debtors sought reinstatement of Mary Hopkins to a full-time teller position, back pay, attorney's fees and other relief for the Bank's section 525(b) violation. The Court's findings, as stated in its first memorandum opinion are adopted here, with the exception of certain changes noted below.

A brief statement of the facts is necessary. Mary Hopkins (debtor) had occasionally worked as a part-time teller for the Bank, as dictated by the Bank's needs, since 1972. In late March of 1985, she was contacted by the Bank's employee in charge of hiring, Ken Riley, about resuming her part-time teller position. The debtor was told the position could develop into full-time employment due to the imminent departure of another bank employee. The debtor began work in April, working each Monday and Friday, as well as the third day of each month.

On April 29, 1985, Mr. Riley and another employee discussed with the debtor the possibility of the debtor assuming a full-time position. The Bank had begun receiving job applications for the position. Although the parties recall the details of the conversation differently, all parties agree that the debtor was to report back to the Bank's president, Mr. Green, after she discussed the possibility of accepting the full-time position with her husband.

The debtors filed their chapter 13 petition in bankruptcy on April 29, 1985. The following Friday, May 3, 1985, the debtor reported to work in her part-time capacity. She met with Mr. Riley to inform him of her bankruptcy. The debtor testified that she accepted the full-time position at that time; the Bank's position is that nothing was mentioned regarding her full-time employment during this meeting. Later that afternoon, the debtor met with Mr. Green. The debtor claims that Mr. Green fired her at that meeting. The actual content of the conversation is in dispute, but Mr. Green did admit that he suggested to the debtor that she not work at the Bank.

In its August 5, 1986, memorandum opinion, the Court found that the Bank had hired the debtor as a full-time employee, and that the debtor had worked at least one day in a new teller position for the Bank. After reconsideration and review of the record, the Court finds that the debtor did not actually begin work as a full-time employee, although she was offered the job and properly accepted it on May 3, 1985, at the meeting with Mr. Riley. Friday, May 3, was the debtor's scheduled part-time day of work, and she was performing her normal part-time duties as teller at the time of her conversations with Mr. Riley and Mr. Green, who dismissed her. There was no testimony as to the actual starting date of the full-time position.

■ The Bank terminated the debtor's part-time employment solely because she and her husband filed for bankruptcy. In addition, the evidence is clear that but for the filing of bankruptcy by the debtor and her husband, the debtor would have been hired in a full-time capacity. The Court must now decide the appropriate remedy for the 11 U.S.C. § 525(b) violation.

Section 525(b) provides:

(b) No private employer may terminate the employment of, or discriminate with respect to employment against, an individual who is or has been a debtor under this title, a debtor or bankrupt under the Bankruptcy Act, or an individual associated with such debtor or bankrupt, solely because such debtor or bankrupt—

(1) is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act;

(2) has been insolvent before the commencement of a case under this title or during the case but before the grant or denial of a discharge; or

(3) has not paid a debt that is dischargeable in a case under this title or that was discharged under the Bankruptcy Act.

There is no provision for remedies in section 525(b). Similarly, section 525(a) and its legislative history, which concern the prevention of discrimination by a governmental agency due to the filing of a bankruptcy petition by a debtor, do not provide for any specific remedies for violating the statute. Courts have used a wide variety of remedial awards to compensate victims of governmental discrimination. *See, e.g., In re William Tell II, Inc.,* 38 B.R. 327 (N.D.Ill.1983); *In re Aegean Fare, Inc.,* 35 B.R. 923 (Bkrtcy.D.Mass. 1983); *In re Rath Packing Co.,* 35 B.R. 615 (Bkrtcy.N.D. Iowa 1983). Presumably, the remedies awarded are derived from 11 U.S. C. § 105(a), which grants the bankruptcy court the power to enforce provisions of the Bankruptcy Code. *In re Fasse,* 40 B.R. 198 (Bkrtcy.D.Colo.1984); *In re Douglas,* 18 B.R. 813 (Bkrtcy.W.D.Tenn.1982).

Only one court to date has addressed the issue of the appropriate remedy for a section 525(b) private employer violation. *See In re Hicks,* 65 B.R. 980 (Bkrtcy.W.D.Ark. 1986). Pursuant to its power under section 105(a), the court in *Hicks* restored the debtor to her former bank teller position from which she had been transferred solely because she had filed bankruptcy.

Clearly, this Court has the power to fashion a remedy for the Bank's violation of section 525(b). In seeking guidance for an appropriate remedy for job discrimination by a private employer, the Court has looked to the general principles of federal job discrimination law, particularly 42 U.S.C. §§ 2000e to 2000e–17 (Title VII) and 29 U.S.C. §§ 621–634 (Age Discrimination in Employment Act (ADEA)).

Title VII and the ADEA give courts the power to grant legal or equitable relief as appropriate to effectuate the purposes of the law. The types of relief may include reinstatement, injunctions, and the payment of back pay and back benefits. One of the purposes of Title VII is to make persons whole for injuries suffered on account of unlawful employment discrimination. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). The "make whole" approach is also applied in ADEA cases. *Rodriquez v. Taylor*, 569 F.2d 1231 (3rd Cir.1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed. 2d 414 (1978). In determining specific remedies, district courts must fashion such relief as the particular circumstances require in order to effect complete restitution. *Albemarle Paper Co.*, 422 U.S. at 415–16, 95 S.Ct. at 2370–71.

■ It is not imperative to decide whether the debtor held a full-time or a part-time position with the Bank at the time she was terminated. Section 525(b) should not be interpreted to mean that only termination of employment is prohibited due to the filing of a bankruptcy petition by a debtor. Rather, the Court interprets the statutory language of section 525(b), which prohibits "discriminat[ion] with respect to employment against [a debtor]," to preclude the Bank from refusing to hire, or promote as the case may be, the debtor solely because of her bankruptcy, once an offer for full-time employment has been extended and accepted.

Except for the Bank's discriminatory actions, the debtor would have started her work on a full-time basis. The debtor, therefore, asks to be reinstated to a full-time teller position. This affirmative relief would arguably return the debtor to her "rightful place"—that is, the position she would have had but for the discrimination. However, the decision to deny or grant reinstatement lies within the sound discretion of the trial court after careful consideration of the facts of each case. *Ginsberg v. Burlington Industries, Inc.*, 500 F.Supp. 696 (S.D.N.Y.1980); *Combes v. Griffin Television, Inc.*, 421 F.Supp. 841 (W.D. Okla.1976). The rightful place theory of relief is recognized in Title VII cases, but there are exceptions to that remedy. Some courts have held that a victim of discrimination may not "bump" the incumbent off his job in seeking reinstatement to his former position. *Local 189, United Papermakers & Paperworkers v. United States*, 416 F.2d 980 (5th Cir.1969), *cert. denied*, 397 U.S. 919, 90 S.Ct. 926, 25 L.Ed.2d 100 (1970); *Rivers v. Washington County Board of Education*, 770 F.2d 1010 (11th Cir.1985). The rationale is not difficult to discern; the discrimination victim's replacement would suffer from the affirmative relief and, therefore, negate the Court's attempt to fashion a remedy that is fair to all innocent parties.

The business necessity exception to the rightful place remedy has also been applied by some courts. The courts recognized that reinstatement would be impractical, considering the disruption to the employer's personnel system and employee relations. *See, e.g., Chewning v. Schlesinger*, 471 F.Supp. 767 (D.D.C.1979) (stating that front pay is appropriate if reinstatement would cause severe disruption of personnel); *Equal Employment Opportunity Commission v. Kallir, Philips, Ross, Inc.*, 420 F.Supp. 919 (S.D.N.Y.1976), *aff'd without op.*, 559 F.2d 1203 (2nd Cir.), *cert. denied*, 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed. 2d 277 (1977) (one year's salary awarded in lieu of reinstatement where reinstatement could lead to mistakes and damage to employer's clients as the litigation had resulted in breakdown of trust and faith between the litigants).

The Court recognizes the potential problems of ordering the debtor's reinstatement to a full-time teller position in this case.

The litigation has no doubt caused some animosity between the parties, and the Bank has a limited number of employment positions. The Court is also aware of the sensitive nature of a bank's status in a small community. However, if reinstatement was denied in this case, the Court would effectively be condoning the Bank's actions. The Eighth Circuit has held that in race and age discrimination cases, reinstatement should not be denied merely because the prosecution of the action in court has caused animosity between the parties. *See Taylor v. Teletype Corp.*, 648 F.2d 1129 (8th Cir.1981), *cert. denied*, 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981); *McIntosh v. Jones Truck Lines, Inc.*, 767 F.2d 433 (8th Cir.1985). Despite the fact that the debtor had previously only worked in a part-time capacity, she is entitled to be reinstated to that position she would have held if the Bank had not unlawfully discriminated against her. *See Briseno v. Central Technical Community College Area*, 739 F.2d 344 (8th Cir.1984). Therefore, the Bank is ordered to reinstate the debtor to a full-time teller position or to a position with comparable responsibilities and renumeration.

Another solution to making a discrimination victim whole, and a remedy sought by the debtor in this case, is an award of back pay for lost compensation. Back pay awards are not designed to punish employers; they are used to elevate the discrimination victim to the economic position she would have occupied. *United States v. N.L. Industries, Inc.*, 479 F.2d 354 (8th Cir.1973); *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122 (5th Cir.1969). The United States Supreme Court has stated that in Title VII cases, although back pay is only one remedy available to the district court at its discretion, back pay is presumptively favored. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). That rationale should apply to the present case.

The record is meager regarding certain necessary elements of a back pay calculation. However, the Court is satisfied that a fair back pay award can be calculated. Unrealistic precision is not required, and a lack of certainty as to the amount of a back pay award is not a bar to that award. *United States v. United States Steel Corp.*, 520 F.2d 1043 (5th Cir.1975), *cert. denied*, 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed. 2d 77 (1976). Both parties agree that the debtor's full-time salary was to be negotiated at a later date. The testimony indicated that the Bank's tellers were paid from $5.75 to $6.35 per hour, depending on experience, at the approximate time the debtor would have started work full-time. Since the debtor had worked as a part-time teller with the Bank as the need arose since 1972, and since all the testimony indicated that the debtor performed her work admirably, the back pay rate will be set at $6.20 per hour. In setting this rate, the Court has considered any possible increase in salary which the debtor may have received since her termination date. The amount of hours per week will be set at forty, the regular work week for the Bank's full-time employees. The end of the back pay claim period is discretionary with the trial court, and neither Title VII nor ADEA specifies an ending date. 8 *Empl. Coordinator* (Research Inst.Am.) § EP–28,317 (1986). Considering the case as a whole so as to fairly treat all parties, the Court holds that the date of the rehearing, January 21, 1987, is the end of the back pay claim period. *See Cleverly v. Western Electric Co.*, 594 F.2d 638 (8th Cir.1979). The starting date for the back pay period shall be May 6, 1985, the Monday following the debtor's dismissal, and the day on which the debtor would presumably have begun her full-time duties.

The testimony indicated that Christmas bonuses were regularly paid to employees in the amount of one week's gross salary. Therefore, the debtor will receive Christmas bonuses for 1985 and 1986, each in the amount of one week's gross salary.

■ The Court is satisfied that the debtor mitigated her damages with reasonable diligence. The debtor testified that she applied for similar work, without success, at three other financial institutions within fifteen miles of her home before declining

dissimilar work at a hotel fourteen miles away.

The debtor testified that after the bank terminated her employment and through approximately January 7, 1987, she worked part-time for her husband in his business. She testified that she worked approximately thirty to thirty-five hours per week performing bookkeeping and other tasks, and that if she had not worked, someone else would have been hired. In fact, the debtor and her husband did hire someone to perform those tasks two weeks prior to the second hearing in this case. No testimony was presented on whether the debtor actually received wages for her work or the amount those services were worth. However, from the debtor's own testimony, the Court is satisfied that she received a benefit from the part-time work and that the value of that benefit represents "interim earnings" which should reduce the back pay award. *See Singer v. Mahoning County Board of Mental Retardation*, 379 F.Supp. 986 (N.D. Ohio 1974); *Bishop v. Jelleff Associates*, 398 F.Supp. 579 (D.D.C. 1974). The Court holds that $3.35 is fair value for the services performed, calculated at the rate of thirty hours per week until the substitute was hired.

The requests for accrued vacation leave and attorney's fees are denied because no testimony was presented as to their amount.

In summary, the Court holds that the Bank discriminated against the debtor solely because she and her husband filed for bankruptcy; the debtor was fired from her part-time position as teller, and the Bank refused to honor its offer for a full-time position. The Bank's actions violated 11 U.S.C. § 525(b), and the debtor is entitled to reinstatement to a similar full-time position and back pay in the amount of $13,824.50.[1] The debtor's request for accrued vacation pay, interest and attorney's fees is denied.

A separate judgment will be entered in accordance with the memorandum opinion pursuant to Bankruptcy Rule of Procedure 9021.

IT IS SO ORDERED.

---

**1.** The net back pay award totals $13,824.50, representing payment for the period May 6, 1985, to January 7, 1987, less a reduction for interim earnings (($6.20–$3.35) × 30 hours × 87 weeks, plus 10 hours × $6.20 × 87 weeks); full payment for the two week period January 8, 1987, to January 21, 1987 (($6.20 × 40 hours) × 2); and two Christmas bonuses, each at one week's gross pay (2 × (40 hours × $6.20)).