Rosario A. **FIORANI, Jr.**, Plaintiff,

v.

**CACI, et al.,** Defendants.

Civil Action No. 95–1536–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 6, 1996.

Rosario A. Fiorani, Jr., Alexandria, Virginia, plaintiff pro se.

Allen S. Rugg, Robert L. Magielnicki, Alan D. Strasser, Kutak Rock, Washington, DC, for defendant CACI.

Richard Wexell, Fairfax, Virginia, Matthew S. Watson, Washington, DC, for defendant Woodside Employment Consultants.

## MEMORANDUM OPINION

ELLIS, District Judge.

Section 525(b) of the Bankruptcy Code, 11 U.S.C. § 525(b), prohibits certain forms of employment discrimination against persons who have filed for bankruptcy. The question here presented is whether this provision applies to a private employer's discriminatory refusal to hire.

**I**

Plaintiff Rosario Fiorani's nineteen-count complaint alleges nineteen instances of discrimination by two corporate and four individual defendants. Named as defendants are Woodside Employment Consultants, CACI, Inc., Barbara Ibraham, Traci Bowles, William Clancy, and Kathleen Tresniak. Each count of the Complaint alleges a separate violation of 11 U.S.C. § 525(b). Because the matter is before the Court on a threshold motion to dismiss the complaint pursuant to Rule 12(b)(6), Fed.R.Civ.P., the facts alleged in the complaint must be accepted as true. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Martin Marietta Corp. v. International Telecomm. Satellite Org.,* 991 F.2d 94 (4th Cir.1992).

According to Count I, defendant Woodside Employment Consultants ("Woodside") supplies workers to companies on a temporary basis. On October 10, 1994, Woodside arranged for Fiorani to work for CACI on a government contract. On November 7, 1994, CACI asked Fiorani to complete the paperwork necessary to obtain a security clearance, allegedly "for permanent employment" with CACI. The form inquired, *inter alia,* whether Fiorani had filed for bankruptcy in the last five years. Fiorani truthfully responded that he had. On November 13, he was summoned to the office of defendant Barbara Ibraham, Project Supervisor at CACI, and asked about the bankruptcy filing. After the meeting, he alleges he was terminated from CACI and that Ibraham told him he was terminated because of the bankruptcy.

In Count II, Fiorani alleges that on January 5, 1995, he received a call from CACI soliciting him for a position as a para-legal on a different government contract. He was prescreened by being asked eight questions, none of which related to bankruptcy. He was then told he was approved for a para-legal position and could attend what the complaint terms "a CACI job fair."[1] At the "job

---

**1.** While not specifically defined in the complaint, a "job fair" is typically a gathering where one or

fair" on January 14, 1995, Fiorani was again interviewed. After the interview, Fiorani alleges he saw the interviewer sign her name to his "hire sheet," which he claims effected his hiring by CACI. He was then sent to defendant Traci Bowles, CACI's Security Manager. Upon reviewing Fiorani's credit report, Bowles noticed his previous bankruptcy filing, and when he admitted that he had indeed filed for bankruptcy, Fiorani alleges that she terminated him.[2]

Count III alleges that on March 20, 1995, Fiorani was called by defendant Kathleen Tresniak of CACI, again soliciting him for a position as a para-legal, and the two arranged a time for an interview. On March 21, however, Tresniak notified Fiorani that he was no longer being considered for the position because he had previously been denied a security clearance. Count III also includes allegations that defendant William Clancy made threatening and intimidating responses to Fiorani's letter and telephone calls,[3] and made false and misleading misrepresentations to him.[4]

In Counts IV–XIX, Fiorani alleges in general terms the existence of sixteen other instances of discrimination by defendants, but does not identify any of the dates, places, or persons involved.[5]

Before the Court are (1) defendants' motions to dismiss all counts; and (2) plaintiff's "motion to set aside and dismiss defendants' motions."

## II

■ The thrust of many of Fiorani's allegations is that defendants violated § 525(b) by refusing to hire him because of his earlier bankruptcy. At this threshold stage, therefore, the principal question presented is whether 11 U.S.C. § 525(b) applies to a private employer's refusal to hire an applicant because that applicant had previously filed for bankruptcy. Analysis properly begins with the language of the statute, which provides, in pertinent part, that:

> No private employer may terminate the employment of, or discriminate with respect to employment against, an individual who is or has been a debtor under this title [or] a debtor or bankrupt under the Bankruptcy Act ... solely because such debtor or bankrupt ... is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act....

11 U.S.C. § 525(b).[6] The statute's explicit reference to discrimination with respect to termination leaves no doubt that terminations are covered. But notably absent from the statute is any explicit reference to

---

more employers disseminate information to prospective employees. Job interviews may also occur.

**2.** CACI contends that Fiorani had not in fact been hired, and so it could not have terminated him. Again, however, the facts alleged in the complaint must be accepted as true for purposes of this motion. *See Scheuer,* 416 U.S. 232, 94 S.Ct. 1683; *Conley,* 355 U.S. 41, 78 S.Ct. 99. *Martin Marietta,* 991 F.2d 94.

**3.** The complaint does not describe the letter or telephone calls, but the inference invited by the allegations and the context is that the letter and telephone calls involved Fiorani's inquiries as to why CACI had not hired him.

**4.** The complaint does not identify the content, context, or dates of the misrepresentations.

**5.** The entirety of Counts IV through XIX is contained in two paragraphs:

"1. Plaintiff does hereby consolidate and condense his other remaining and outstanding resumes and employment applications that

were previously, and currently submitted to Defendant for employment; Plaintiff does, therefore, reassert and allege in each remaining count, from Counts Four (4) through Count Nineteen (19), that similar facts, evidence, and illegal discharges and terminations have taken place, under Title 11, SS 525, as stated and outlined in Counts One (1) through Three (3) above.

"2. Plaintiff further reasserts, claims, and alleges that facts and evidence does exist where certain referrals were properly made and submitted to CACI, from the Virginia Employment Commission, (hereafter called, "VEC"), and other employment agencies, on and after November 17, 1994, to the present."

**6.** The statute also protects those who have "been insolvent before the commencement of a case under this title or during the case but before the grant or denial of a discharge; or [have] not paid a debt that is dischargeable in a case under this title or that was discharged under the Bankruptcy Act." 11 U.S.C. § 525(b)(2)–(3). These provisions are not at issue in this case.

discrimination in hiring. This omission would be conclusive were it not for the statute's general reference to discrimination "with respect to employment" against one who has filed for bankruptcy, which reference arguably furnishes a basis for stretching the statute to cover hiring. Yet, this argument seems to stretch the statute too far, for if the reference to discrimination "with respect to employment" is read to cover hiring, it would, for the same reasons, seem that the phrase was also meant to reach termination. But it is quite apparent that this is not so, given that statute's framers found it necessary to make separate, explicit reference to termination. More likely, the phrase discrimination "with respect to employment" refers neither to hiring nor termination, but to other terms and conditions of employment.

■ In any event, the statute includes a more compelling clue to its scope. The language of § 525(b) in issue here was added by Congress in 1984. It was antedated by § 525(a), which Congress enacted in 1978. A comparison of the two provisions is instructive on the issue at bar. Subsection (a), which applies only to governmental units, states that a governmental unit may not "*deny employment to*, terminate the employment of, or discriminate with respect to employment against" a debtor or bankrupt. 11 U.S.C. § 525(a) (emphasis added).[7] Thus, this portion of § 525 explicitly includes a prohibition against discrimination in hiring on the basis of an applicant's bankruptcy filing. By contrast, § 525(b), the private-employer provision, omits the prohibition of "denying employment" on the basis of an applicant's bankrupt status. This is compelling evidence that § 525(b) does not reach hiring, for it is well established that where "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress act[ed] intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464

U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir.1972)); *see also United States v. Wooten*, 688 F.2d 941, 950 (4th Cir.1982). Indeed, some courts have held that such a rule is particularly appropriate when construing the Bankruptcy Act, "a detailed and calculated statutory scheme." *See, e.g., Lynch v. Johns–Manville Sales Corp.*, 710 F.2d 1194 (6th Cir.1983) (construing Chapters 11 and 13 *in pari materia*); *General Motors Acceptance Corp. v. Bell (In re Bell)*, 700 F.2d 1053 (6th Cir.1983) (construing Chapters 7 and 13 *in pari materia*); *Waldschmidt v. Ranier (In re Fulghum Construction Co.)*, 706 F.2d 171 (6th Cir.1983) (construing subsections of 11 U.S.C. § 547 *in pari materia*). This rule of construction, applied here, points persuasively to the conclusion that § 525(b) was not intended to subject private employers to liability for choosing not to hire an applicant on the basis of his bankruptcy status.

Pertinent authority is scant, but what little there is supports this conclusion. In *Madison Madison Int'l, P.C. v. Matra (In re Madison Madison Int'l, P.C.)*, 77 B.R. 678 (Bankr.E.D.Wis.1987), the bankruptcy court, relying in large part on the textual argument made here, held that the statute does not impose liability on private employers who refuse to hire those who have filed for bankruptcy. *In re Hopkins*, 81 B.R. 491 (Bankr. W.D.Ark.1987), is not to the contrary. That court held that § 525(b) "preclude[s] the [employer] from refusing to hire ... the debtor solely because of her bankruptcy, *once an offer for full-time employment has been extended and accepted.*" *Id.* at 494 (emphasis added). The emphasized language makes clear that in *Hopkins* an employment contract had been formed, an offer of employment having been made and accepted. This sharply distinguishes *Hopkins* from *Madison*, for in *Hopkins*, because an employment contract had been formed, the employer terminated the person, rather than simply declined to hire her.[8] In *Madison*, by

---

7. Section 525(a) also prohibits discrimination by governmental units in acts to "deny, revoke, suspend or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, [or] discriminate in such grants to [a bankrupt]." *Id.*

8. *In re Madison* and *In re Hopkins* were decided less than a month apart and neither cites the other.

contrast, employment negotiations between the parties were ongoing; no contract had been formed; the employer thus did not terminate the person, but simply declined to hire her.[9]  In sum, *Madison*, the sole decision directly on point, supports the conclusion reached here that § 525(b) does not reach hiring actions.

One commentator disagrees, summarily dismissing the text of the statute and the approach of *Madison* as "strictly textual." *See* Douglass G. Boshkoff, *Bankruptcy–Based Discrimination*, 66 Am.Bankr.L.J. 387 (1992).  He argues instead that courts should look beyond the mere words of § 525(b) and should seek to give effect to the statute's broad purpose of preventing discrimination against debtors as reflected in a congressional committee report.[10]  The argument is unpersuasive.  To adopt this reasoning would be to join the "text does not matter" school of statutory interpretation.  But of course, a statute's text and structure do matter; they are central to the interpretive task.  It would be wholly inappropriate for a court to disregard a statute's plain language and structure and embark instead on a wide-ranging attempt to expand the statute beyond its explicit terms merely to give effect to an abstract statement of purpose.[11]

Moreover, the congressional report on which the commentator relies as supporting a "liberal" and "expansive" reading of § 525(b) is inapplicable, as it was made with respect to § 525(a), not § 525(b).[12]  And there is no reason to believe that the congressional committee statement addressing subsection (a) was silently adopted by the Congress that enacted subsection (b) six years later.  On the contrary, Congress' inclusion of an explicit reference to hiring in § 525(a), juxtaposed with its deliberate omission in § 525(b) six years later, makes unmistakably clear that subsection (b) does not reach hiring decisions.[13]

**9.** *Hopkins* is also distinguishable from *Madison* and the instant case because the *Hopkins* plaintiff was a part-time employee alleging discrimination in failing to "hire" or "promote" her to a full-time position.  Thus, the phrase "refusing to hire" applied there to the employer's refusal to allow the plaintiff to change positions within the company, circumstances not present in *Madison*.

**10.** *See id.* at 396–97.  The congressional committee statements relied on by the author are as follows:

> [T]he section is not exhaustive.  The enumeration of various forms of discrimination against former bankrupts is not intended to permit other forms of discrimination.  The courts have been developing the Perez (*Perez v. Campbell*, 402 U.S. 637 [91 S.Ct. 1704, 29 L.Ed.2d 233] (1971)) rule.  This section permits further development. . . .  The courts will continue to mark the contours of the antidiscrimination provision in pursuit of sound bankruptcy policy.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 366–67 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6323; S.Rep. No. 989, 95th Cong., 2d Sess. 81 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5867.  From this, he concludes, unconvincingly, that the anti-discrimination provision of § 525(b) is to be interpreted liberally and that Congress has ceded authority to the judicial branch to mark the contours of the provision.

**11.** *See In re Madison*, 77 B.R. at 681 ("Any attempt to liberalize this statute, in the face of its plain meaning, is inappropriate.")  Indeed, "[t]oo much 'liberality' will undermine the stat-

ute as surely as too literal an interpretation would."  *In re Erickson*, 815 F.2d 1090, 1094 (7th Cir.1987); *see Wilson v. Harris Trust & Savings Bank*, 777 F.2d 1246, 1249 (7th Cir. 1985) ("We cannot find a cause of action under § 525 when Congress has expressly declined to provide one.").

**12.** Legislative history relating to subsection (b) is remarkably sparse, and says nothing of relevance to the question presented by this case.  *See* John C. Chobot, *Anti–Discrimination Under the Bankruptcy Laws*, 60 Am.Bankr.L.J. 185, 197 (1986) ("The scant legislative history of the 1984 Amendments Act does not explain why the 'deny employment to' aspect was omitted from section 525(b).").

**13.** Three decisions seemingly conclude otherwise as they rely on this same congressional committee statement to conclude that § 525(b) reaches a credit union's refusal to extend certain loan opportunities to members because the members had filed for bankruptcy.  *See In re Patterson*, 125 B.R. 40, 53 (Bankr.N.D.Ala.1990) (applying § 525(b) to debtor's credit union); *In re Callender*, 99 B.R. 378 (Bankr.S.D.Ohio 1989) (same); *In re Brown*, 95 B.R. 35 (Bankr.E.D.Va.1989) (same).  Yet, because these decisions never discuss how congressional statements made with respect to one bill can be authoritative on the interpretation of another provision enacted six years later, they are not persuasive.  Similarly unpersuasive is a fourth case holding that § 525(b) does not reach a credit union's decision

The reference in the legislative history to *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), is further confirmation that the committee report language quoted above cannot be applied to § 525(b). In *Perez*, the Supreme Court held that an Arizona statute had both the effect and the purpose of frustrating the comprehensive federal bankruptcy scheme and was therefore violative of the Supremacy Clause, U.S. Const, art. VI, § 2. *See Perez*, 402 U.S. at 654, 91 S.Ct. at 1713. But the reasoning of *Perez* clearly does not apply in the context of § 525(b) for the simple reason that an action by a private employer cannot violate the Supremacy Clause. Precisely this principle led several courts to decline to extend § 525(a) to private action, even in the face the congressional reports that called upon courts to "further develop" bankruptcy's anti-discrimination law.[14] Just as those courts refused to rely on inapposite legislative history to extend § 525(a) to cover discrimination by private employers, which the text of the statute plainly did not reach, so too must this Court reject the invitation here to rely on that same legislative history to extend the statute to cover hiring decisions. If a private employer is to be prohibited from refusing to hire an applicant because that person has filed for bankruptcy, Congress must say so, which it as not yet done.

### III

From this conclusion, it follows that any claim in which Fiorani alleges merely that he was not hired because of his prior bankruptcy filing must be dismissed. It remains to identify any such claims.

■ In Count I, Fiorani alleges that Woodside assigned him to work for CACI. During this period of temporary employment, CACI discovered that he had filed for bankruptcy and terminated him. Woodside, following the wishes of its "client" CACI, also "terminated" Fiorani, in that they pulled him from the CACI job. Count I plainly alleges discrimination in termination, which is explicitly covered by § 525(b).

■ In Count II, Fiorani alleges that CACI approved him to attend a job fair and that after the interview at the job fair, the interviewer signed her name to his "hire sheet." Fiorani claims that the signature constituted hiring him and that when he was later denied employment because of his bankruptcy, it amounted to termination. Whether he was actually hired by the stroke of his interviewer's pen is sharply disputed; CACI argues that the interviewer's notation was merely an indication that Fiorani had passed the first hurdle on the way to an offer of employment. Yet, at this stage in the litigation, Fiorani's allegations must be taken as true. Of course, the matter may look quite different at the summary judgment stage. Should the summary judgment record reflect that the stroke of the interviewer's pen did not effect Fiorani's hiring, then, in this event, § 525(b) would not apply and Count II would fail. For now, however, Fiorani has stated a claim of discrimination under § 525(b) in Count II and the motion to dismiss that count must be denied.[15]

to withhold loan privileges to a debtor. *See In re Spaulding*, 116 B.R. 567, 572 (Bankr.S.D.Ohio 1990). Like the three that reached the opposite conclusion, this decision also fails to address why six-year old committee report language should be applicable to § 525(b).

**14.** *See Ryan v. Ohio Edison Co.*, 611 F.2d 1170, 1175–76 (6th Cir.1979) (noting that *Perez* rested on the Supremacy Clause and that while "the court may compel a state to observe the spirit as well as the letter of the law in order to avoid frustrating Congress' purpose, the court may not compel a private party to do more than obey the letter of the law"); *Barbee v. First Virginia Bank–Colonial (In re Barbee)*, 14 B.R. 733 (Bankr. E.D.Va.1981) ("For this Court to enjoin a private entity based upon [§ 525(a)] would be judicial

legislation in an area which Congress has specifically considered and defined."). *But see Bell v. Citizens Fidelity Bank & Trust Co.*, 636 F.2d 1119 (6th Cir.1980) (remanding for determination whether bank's dismissal of employee because of her filing for bankruptcy violated § 525(a), but not addressing whether *Perez* might be extended beyond state action); *In re Heath*, 3 B.R. 351, 353 n. 1 (Bankr.N.D.Ill.1980) (stating in *dicta* and without explanation that § 525(a) is no bar to judicial extension of the no-discrimination rule to private parties).

**15.** Although the defendants' threshold motions to dismiss did not address the issue of whether the individual defendants were proper parties, the Court *sua sponte* dismisses them as defendants because they are not "private employers."

In Count III, Fiorani alleges that he was called by an agent of CACI to arrange an employment interview, but that before the interview, CACI withdrew his name from consideration for the position because of Fiorani's having filed for bankruptcy. Plainly, this count alleges only discrimination in hiring and must be dismissed.[16]

In Counts IV through XIX, Fiorani alleges that he submitted resumes and employment applications to CACI and that the Virginia Employment Commission referred his name to CACI, yet CACI failed to hire him. Again, these counts do not allege that CACI "terminate[d] the employment of, or discriminate[d] with respect to employment against" Fiorani because of his bankruptcy status, and they must be dismissed.[17]

## IV

CACI and the individual defendants make two other arguments for dismissal of Count I. They first argue that Fiorani cannot allege that CACI was his employer be-cause he explicitly alleges that Woodside was his employer. The short answer to this contention is that even if § 525(b) contemplates that a claimant may have only one "employer," Fiorani is nonetheless entitled to plead in the alternative that either CACI or Woodside was his employer.[18]

CACI's second argument is that, as a matter of law, CACI cannot be deemed to be Fiorani's employer because Fiorani was a temporary worker supplied by a temporary employment agency. The statute itself does not define the term "employer." No reported decision addresses whether a business using workers supplied by a temporary employment agency is an "employer" under § 525(b). Nor has this circuit yet passed on the more general question of what test to apply to decide whether one qualifies as an "employer" for purposes of § 525. Instructive here is that courts in other discrimination contexts have adopted a multi-factor test for determining who is an employer.[19] Un-

---

**16.** Alternatively, Count III must be dismissed as to defendant Clancy for failure to state a claim, for although Fiorani alleges that Clancy attempted to violate his "Civil and Constitutional Rights," he does not specify what those rights were.

**17.** Alternatively, Counts IV through XIX must be dismissed for failure to comply with Rule 8(a), Fed.R.Civ.P., for they are plainly insufficient. These sixteen counts are stated in two paragraphs. Essentially, Fiorani alleges that he applied for unspecified other positions with CACI and that he was referred to CACI by employment agencies and that he never received a job. These bare allegations fail to provide "a short and plain statement of the claim showing that [Fiorani] is entitled to relief." Fed.R.Civ.P. 8(a).

**18.** Moreover, CACI's argument assumes that Fiorani can only have one employer for purposes of § 525(b) and this is not necessarily so. Although no reported case has addressed whether an individual can have more than one employer under § 525(b), numerous cases have held in the Title VII context that "a plaintiff may, in certain circumstances, have more than one 'employer' for purposes of Title VII liability." *King v. Dalton*, 895 F.Supp. 831, 837 (E.D.Va.1995); *see Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350 (11th Cir.1994) (interpreting term "employer" under Title VII to include "joint employers"); *Magnuson v. Peak Tech. Servs., Inc.*, 808 F.Supp. 500, 507–08 (E.D.Va.1992); *Amarnare v. Merrill Lynch, Pierce, Fenner & Smith*, 611 F.Supp. 344, 347–48 (S.D.N.Y.1984) (temporary employee was

employee of both temporary agency and brokerage firm to which she was temporarily assigned); *Alie v. NYNEX Corp.*, 158 F.R.D. 239, 245 (E.D.N.Y.1994) (stating that "[t]he law is clear that an individual may have more than one employee for Title VII purposes"). Whether a similar conclusion obtains in the § 525(b) bankruptcy context is unclear, for the cases holding that an individual may have more than one employer under Title VII rely on settled authority holding that Title VII permits as plaintiffs those who do not stand in a direct employment relationship with an employer and on the broad, remedial goals of Title VII. *See, e.g., Magnuson*, 808 F.Supp. at 507–08. Whether § 525(b), on the other hand, permits suits by those who are not in a direct employment relationship with an employer is disputed. *See supra* note 13. Similarly, courts disagree as to whether § 525(b) is to be broadly construed. *See supra* note 14. Thus, the rationale for recognizing that a person may have more than one employer for Title VII purposes may not apply with equal force to the bankruptcy anti-discrimination context. In any event, the issue need not be resolved here, because Fiorani is entitled to plead in the alternative that either Woodside or CACI was his employer for purposes of § 525(b).

**19.** *See Mares v. Marsh*, 777 F.2d 1066 (5th Cir. 1985) (Title VII); *Garrett v. Phillips Mills, Inc.*, 721 F.2d 979, 981 (4th Cir.1983) (age discrimination); *EEOC v. Zippo Mfg. Co.*, 713 F.2d 32 (3d Cir.1983) (age discrimination); *Hickey v. Arkla Indus., Inc.*, 699 F.2d 748 (5th Cir.1983); (age

der this test, first enunciated in *Spirides v. Reinhardt*, 613 F.2d 826 (D.C.Cir.1979), the right to control the individual's work remains the most important factor, but is alone not dispositive. Other relevant factors to be considered include:

(1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated, i.e. by one or both parties, with to without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Spirides*, 613 F.2d at 832. As the Eleventh Circuit has noted, courts derived this test from "general common law concepts" because the applicable statute [Title VII] contained "no indication that Congress intended the words of the statute to have anything other than their plain ordinary meaning as commonly understood." *Cobb v. Sun Papers, Inc.*, 673 F.2d 337, 340–41 (11th Cir.1982). Similarly here, Congress in § 525(b) has not explicitly defined the term "employer," nor has it indicated that the word has anything but its ordinary meaning. Thus, a test based

on general common law principles seems as appropriate for defining "employer" for purposes of § 525 as it is for the Title VII context.

The *Spirides* test applied here compels the conclusion that Fiorani's allegations in the complaint are sufficient to permit the claim to proceed. Although the allegations in the complaint shed very little light on which way many of the *Spirides* factors point, the allegations do indicate that CACI had the right to control the means and manner of Fiorani's work performance, the most important factor in the test. Further scrutiny of this issue may be appropriate at the summary judgment stage after further factual development.[20] In sum, it cannot be said as a matter of law that CACI was not Fiorani's employer, and the motion to dismiss Count I with respect to CACI and the individual defendants must be denied, without prejudice to CACI's right to raise these issues again on a Rule 56 motion, should the record warrant such a motion.[21]

## V

For its part, defendant Woodside argues that with respect to Count I, as a matter of law, the complaint discloses that Woodside did not in fact discriminate against Fiorani. Woodside points out that the complaint never alleges that Woodside terminated Fiorani "solely because" of his bankruptcy or even that bankruptcy was a reason at all in Woodside's decision. Rather, Woodside hires its employees for particular temporary position with its clients. Once the client no longer needs the worker, Woodside terminates the worker. Here, CACI informed Woodside that it no longer needed Fiorani

discrimination); *Cobb v. Sun Papers, Inc.*, 673 F.2d 337 (11th Cir.1982) (Title VII); *Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 883 (9th Cir.1980) (Title VII); *Spirides v. Reinhardt*, 613 F.2d 826 (D.C.Cir.1979) (Title VII).

**20.** In accord with this conclusion is *Amarnare v. Merrill Lynch, Pierce, Fenner & Smith*, 611 F.Supp. 344, 347–48 (S.D.N.Y.1984), in which a court, applying the *Spirides* test, held that the complaint and accompanying affidavits showed that the defendant company who received the services of a temporary worker qualified as an employer and accordingly denied the motion to dismiss.

**21.** CACI also argues that the complaint should be dismissed because it fails to allege that Fiorani actually filed for bankruptcy. Fiorani did, however, allege that he "honestly" answered questions about his filing for bankruptcy within the last five years and that a CACI employee told him that he was terminated because he filed for bankruptcy. This is sufficient, especially for a *pro se* complaint. *See Haines v. Kerner*, 404 U.S. 519, 521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (holding that allegations of *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers).

and Woodside accordingly terminated him. When an employer applies a policy equally without regard to the employee's bankrupt status, it cannot be liable under § 525(b). *See In re Norton,* 867 F.2d 313, 317 (6th Cir.1989) (act permitting debtor to avoid license revocation following accident by paying $65 not discriminatory because all drivers must pay the fee after accident); *In re Brown,* 851 F.2d 81, 86 (3d Cir.1988) (credit union's denial of services to both bankrupts and non-bankrupts who fail to repay their loans not discriminatory); *In re Callender,* 99 B.R. 378, 380 (1989). Here, the complaint alleges that Woodside had a policy of terminating its employees when its client no longer desired their services. In carrying out such a policy, Woodside does not discriminate against debtors who file for bankruptcy. Count I therefore must be dismissed as to Woodside.

An appropriate order will enter.