Marlene LEARY, Plaintiff–Appellant,

v.

WARNACO, INC., Defendant–Appellee,

No. 00 CIV. 3358(CLB).

United States District Court,
S.D. New York.

July 28, 2000.

James B. Glucksman, Daniel S. Alter, Rattet & Pasternak, LLP, Harrison, NY, for Plaintiff.

Cynthia Glasgow, Seyfarth Shaw Fairweather & Geraldson, New York City, for Defendant.

## MEMORANDUM & ORDER

BRIEANT, District Judge.

Plaintiff–Appellant Marlene Leary seeks to review an order of Bankruptcy Judge Adlai S. Hardin, Jr. dated March 17, 2000, granting Defendant–Appellee's motion to dismiss the complaint and denying Plaintiff's motion for leave to amend the complaint. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 158.

On December 17, 1998, Plaintiff–Appellant Marlene Leary filed a voluntary petition under Chapter 7 of the Bankruptcy Code. On April 20, 1999, Plaintiff received her discharge under Chapter 7, and the case was closed on April 29, 1999. We are told that there is nothing unusual about this bankruptcy, which is characterized by Plaintiff's attorney as a "plain vanilla case."

On May 3, 1999, Plaintiff interviewed with Defendant for an executive assistant position. On June 23, 1999, Plaintiff had a second interview with James Morgan, Defendant's President of Intimate Apparel. Plaintiff claims that Mr. Morgan offered Plaintiff the position, which was to commence on July 26, 1999. According to the complaint, this offer was "subject to" the results of a credit report. Complaint ¶ 11. By letter dated August 4, 1999, Defendant informed Plaintiff that it would not hire her "in whole or in part" because of the credit report. The credit report revealed the bankruptcy, with no special features bearing on Plaintiff's conduct or her character.

On September 23, 1999, Plaintiff–Appellant filed a complaint in the United States Bankruptcy Court for the Southern District of New York (Hardin, J.) alleging that Defendant–Appellee violated 11 U.S.C. § 525(b)(1) and (3) by refusing to hire Plaintiff because of her bankruptcy status, and also alleging a claim under New York law for Intentional Infliction of Emotional Distress ("IIED"). On November 19, 1999, Defendant–Appellee moved to dismiss the complaint for failure to state a claim upon which relief can be granted. On January 21, 2000, Plaintiff opposed the motion and moved for leave to amend the complaint. Plaintiff's proposed amended complaint removed the IIED claim, and added a claim for attorneys' fees and punitive damages. The proposed amended complaint also removed the "subject to" language and "clarified" that the employment offer was unconditional. On March 17, 2000, the bankruptcy court entered an order dismissing the complaint and denying Plaintiff's motion. Plaintiff filed her Record on Appeal with this Court on March 31, 2000.

*Motion to Dismiss*

 This Court reviews the bankruptcy court's dismissal of the complaint *de novo. In re Pudgie's Development of NY, Inc.,* 239 B.R. 688, 691 (S.D.N.Y.1999)(Conner, J.)(*citing Federal Deposit Insurance Company v. Hirsch,* 980 F.2d 125 (2d Cir.1992)). The District Court will affirm the bankruptcy court's dismissal of the complaint if Plaintiff can

prove no set of facts which would entitle her to relief. *See Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 51 (2d Cir.1995); *George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,* 554 F.2d 551, 553 (2d Cir.1977). For purposes of reviewing the bankruptcy court's dismissal of the complaint, this Court must take as true all factual allegations contained in the complaint. *Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir. 1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992).

■ Section 525(b) is one of the bankruptcy provisions which Congress enacted to effectuate the "fresh start" policy, which is behind personal bankruptcies. 11 U.S.C. § 525(b) states:

> No private employer may terminate the employment of, or discriminate with respect to employment against, an individual who is or has been a debtor under this title; a debtor or bankrupt under the Bankruptcy Act, or an individual associated with such debtor or bankrupt, solely because such debtor or bankrupt—
>
> (1) is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act.
>
> (2) has been insolvent before the commencement of a case under this title or during the case but before the grant or denial of a discharge; or
>
> (3) has not paid a debt that is dischargeable in a case under this title or that was discharged under the Bankruptcy Act.

Warnaco argued below and Judge Hardin found that Section 525(b) applies only to actions taken after an employment relationship has been established. It is for this reason Plaintiff sought to amend the complaint. While neither this Court nor Our Court of Appeals has addressed the issue, some lower courts have held that § 525(b) does not apply to hiring decisions before an offer has been extended and accepted. *See e.g. Fiorani v. CACI,* 192 B.R. 401, 405–06 (E.D.Va.1996); *Pastore v.*

*Medford Sav. Bank,* 186 B.R. 553, 554–55 (D.Mass.1995); *In re Hopkins,* 81 B.R. 491, 494 (Bankr.W.D.Ark.1987)(Section 525 precludes an employer "from refusing to hire, or promote as the case may be, the debtor solely because of her bankruptcy, once an offer for full-time employment has been extended and accepted.").

■ This rather narrow construction of a remedial statute has been reached by drawing a negative inference comparing this statute with § 525(a). Section 525(a) states that the *government* may not "deny employment to, terminate the employment of or discriminate with respect to employment against" a person who has been a bankruptcy debtor. Section 525(b), while similar in language, does not contain the phrase "deny employment to." We are asked to infer from this omission not only that it was purposeful to achieve a disparate result where the Government is the employer, but that § 525(b) accordingly allows employers to discriminate on the initial hiring against those unfortunate economic casualties who are seeking or have obtained a fresh start from the bankruptcy court, and yet at the same time prohibits discrimination against those who have been hired.

The plain meaning of the statute does not support such a gloss. Section 525(b) prohibits an employer from discriminating "with respect to employment." Such language is clearly broad enough to extend to discriminating with respect to extending an offer of employment. Such an application of the plain meaning of the statute makes sense. The evil being legislated against is no different when an employer fires a debtor simply for seeking refuge in bankruptcy, as contrasted with refusing to hire a person who does so. The "fresh start" policy is impaired in either case. A Court should not go out of its way to place such an absurd gloss on a remedial statute, simply because the scrivener was more verbose in writing § 525(a).

"Where, as here, the statute's language is plain, 'the sole function of the court is to

enforce it according to its terms'." *West Virginia University Hospitals, Inc. v. Casey,* 499 U.S. 83, 99, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991) (Scalia, J.) quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917). See also *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) ("Our inquiry must cease if the statutory language is unambiguous"); *Desiderio v. National Association of Securities Dealers, Inc.,* 191 F.3d 198, 204 (2d Cir.1999) ("If the text is unambiguous, the inquiry is at an end and we need proceed no further.")

Plaintiff's claim is for discrimination with respect to employment. This includes by its plain meaning *all* aspects of employment including hiring, firing and material changes in job conditions.

■ The order appealed from dismissing the complaint is reversed. Whether Defendant did in fact discriminate remains a disputed issue of fact. Obviously the mere ordering of a credit report or a review of the bankruptcy file followed by rejection of the applicant, does not compel an inference of discrimination. Often a bankruptcy file may reveal a material character defect or problem, such as a history of profligate living, a gambling habit, or drug usage, by a job applicant seeking a fiduciary position or a policy position dealing with government or the public. Other possible reasons may exist for failure to hire in a particular case.

*Motion to Amend the Complaint*

■ The Bankruptcy Court did not abuse its discretion in denying leave to add claims for punitive damages and attorneys' fees. There is no authority for an award of punitive damages or attorneys' fees under § 525(b). If Congress had intended to award punitive damages or attorneys' fees under § 525(b) it could have said so, but it did not. *See e.g. Hicks v. First Nat'l Bank of Harrison,* 65 B.R. 980 (Bkrtcy.W.D.Ark.1986)(discussing attorneys' fees). Plaintiff argues that § 525(b)

"implicitly incorporates" 11 U.S.C. § 524(a)(2) and § 362(h), but no authority is cited. Further, even if § 525(b) incorporated these sections, Defendant has not commenced an action to collect a debt or otherwise violated a bankruptcy stay. The bankruptcy court's denial of leave to add these claims was proper because this amendment would have been futile. *Dluhos v. Floating & Abandoned Vessel Known as "New York",* 162 F.3d 63, 69 (2d Cir.1998). To the extent that the proposed amendment sought to twist the factual allegations in order to avoid dismissal based on the Bankruptcy Court's view of the law, so as to claim this is not a refusal to hire case as originally pleaded, it was not an abuse of discretion to deny leave to amend.

There is no basis for an IIED claim and by omitting it from the proposed amended complaint, this Court deems it abandoned.

## CONCLUSION

The order is reversed in part and the case is remanded to the Bankruptcy Court for proceedings consistent with the foregoing.

SO ORDERED.

## JUDGMENT

Whereas the above entitled action having been assigned to the Honorable Charles L. Brieant, U.S.D.J. and the Court thereafter on July 28, 2000, having handed down its memorandum and order, that the order is reversed in part and the case is remanded to the Bankruptcy Court for proceedings consistent with the memorandum and order, it is,

**ORDERED, ADJUDGED AND DE-CREED:** That the appeal be and it is hereby remanded to the Bankruptcy Court.